UNITED STATES

v.

Michael K. NICHOLSON, 203 50 9222, Seaman Apprentice (E–2), U. S. Naval Reserve.

NMCM 80 0963.

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 5 Oct. 1979.

Decided 30 June 1982.

MAJ James P. Axelrod, USMC, Appellate Defense Counsel.

CAPT T. C. Watson, Jr., JAGC, USN, Appellate Government Counsel.

LCDR Michael R. McGuire, JAGC, USN, Appellate Government Counsel.

Before GLADIS, Senior Judge, and BAUM and BOHLEN, JJ.

GLADIS, Senior Judge:

Appellant was convicted at a general court-martial bench trial, pursuant to his pleas, of conspiracy to commit murder and murder, violations of Articles 81 and 118, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 881, 918. The court sentenced appellant to a dishonorable discharge, confinement at hard labor for life, total forfeitures, and reduction to pay grade E–1. As provided in the sentence limiting provisions of a pretrial agreement, the convening authority approved a sentence which included a dishonorable discharge, confinement at hard labor for 40 years, total forfeitures, and reduction to pay grade E–1. The pretrial agreement contained a clause in the sentence limiting provisions which also provided that appellant would be eligible for parole in seven years, vice the statutory calculation of ten years. *See* 18 U.S.C. § 4205(a). The convening authority incorporated this provision in his final action. Appellant assigns three errors for our consideration.

I

THE APPELLANT'S PLEAS OF GUILTY ARE IMPROVIDENT AS THERE IS A FAILURE OF CONSIDERATION FOR HIS PLEAS IN THAT THE CONVENING AUTHORITY IS WITHOUT THE POWER TO MODIFY THE PAROLE ELIGIBILITY DATE OF THE APPELLANT'S SENTENCE TO CONFINEMENT AT HARD LABOR AS BARGAINED FOR IN THE PRETRIAL AGREEMENT.

A. The Convening Authority Is Without The Power To Order Modification Of The Appellant's Parole Eligibility.

B. The Bargained For Consideration Of Shortening The Appellant's Parole Eligibility Date Was Of The Essence Of The Pretrial Agreement And Affects The Appellant's Pleas.

Appellant pleaded guilty pursuant to the terms of a pretrial agreement. During the comportment inquiry, it became clear that the understanding of Government, appellant and the military judge was that appellant would be eligible for parole in seven years. These provisions were incorporated into the convening authority's final action.

In an effort to determine whether the U. S. Bureau of Prisons would honor the convening authority's action, appellate defense counsel contacted that agency. The Bureau of Prisons deferred the question to the Judge Advocate General who declined response until this Court addressed the issue. Consequently, the Bureau of Prisons awaited an opinion from the U. S. Navy. Subsequently, appellant received his Department of Justice Federal Prison System Computation Record which clearly showed that eligibility for parole had been calculated at ten years from the date of confinement, not the seven years bargained for in appellant's pretrial agreement and approved in the convening authority's action.

The United States, in its appellate brief, declared that it intended to scrupulously adhere to all provisions of the pretrial agreement. Accordingly, this Court issued an order on 22 January 1982 which directed the Government to demonstrate that the "Secretary of the Navy has approved a date for appellant's eligibility for parole consideration that is seven years from the date the sentence was imposed by the court-martial and that this date is reflected in the Federal Prison System Computation Record . . . or in some other satisfactory manner effect a change in the parole eligibility date for appellant. . . ." Thereafter, in response pursuant to the authority provided by 10 U.S.C. § 952 and the policy and procedures found in applicable Departmental regulations, the Assistant Secretary of the Navy (Manpower and Reserve Affairs) set a parole eligibility date calculated at seven years from the date of confinement in order to conform to the terms of the pretrial agreement. Accordingly, we find Assignment of Error I to be moot.

Appellant had filed an answer to Government's response to our order which calls into question the efficacy of the Secretarial action. Bureau of Prisons, Transfers, 28 C.F.R. § 527.10(c) (1980), states in pertinent part that:

The Bureau of Prisons will accept the sentence computation so provided by the military authorities. . . .

Clearly, the Bureau of Prisons considers the action upon which it bases its sentence computation to satisfy the aforementioned provision. Appellant's argument is sheer speculation and is dismissed as such.

II

PREPARATION OF FITNESS REPORT DRAFTS BY ASSISTANT TRIAL COUNSEL EVALUATING THE PERFORMANCE OF DETAILED DEFENSE COUNSEL RESULTED IN PREJUDICIAL ERROR.

■ The fact that trial counsel is an immediate supervisor of detailed defense counsel and that he endorsed defense counsel's efficiency reports is not prejudicial *per se.* Where there is no basis for questioning the adequacy of defense counsel's performance, no prejudice can be found. *United States v. Hubbard,* 20 U.S.C.M.A. 482, 43 C.M.R. 322 (1971). *See also United States v. Pack,* 9 M.J. 752 (N.C.M.R.1980).

■ Prior to entering pleas, defense moved for appropriate relief to have assistant trial counsel removed from the proceedings on the ground that he was disqualified from acting in that capacity because he had prepared fitness report drafts evaluating detailed defense counsel's performance of duty. Appellate Exhibits IV and V established the relevant facts presented in argument on the motion:

LCDR Richard C. Newman, JAGC, USN, has been detailed as Assistant Trial Counsel in this case. LCDR Newman also served as Assistant Government Counsel during the Article 32 Investigation in this case. He is closely acquainted with the facts, circumstances, evidence and procedural posture in this case. LCDR Newman is also Head, Naval Legal Service Office, Mayport, Florida, to which Detailed Defense Counsel, LT Richard G. Williams, JAGC, USNR, is assigned. LT Ronald V. Swanson, JAGC, USN, is acting as Individual Military Counsel in this case. LT Swanson is permanently assigned as Head, Naval Legal Service Branch Office, Guantanamo Bay, Cuba.

Appellate Exhibit V.

LCDR NEWMAN'S primary duty is Head of the Naval Legal Service Branch Office, Mayport, Florida. He had been assigned that primary duty since the spring 1978 and his currently planned rotation is summer of 1980. As head of the Naval Legal Service Branch Office, LCDR NEWMAN has administrative responsibility for the daily operation of the Mayport Branch office. He is the military supervisor for all persons employed in the branch office. Although the office is loosely divided, for purposes of criminal prosecutions, into a loosely defined defense and prosecution function, the senior defense counsel at the Branch Office has no input into the officer fitness report of

the junior defense counsel. LT WILLIAMS, detailed defense counsel in this case, is the junior defense counsel at the Branch Office in Mayport.

LT WILLIAMS works for LCDR NEWMAN. LCDR NEWMAN drafts, in the rough, the annual officer fitness report for LT WILLIAMS. LCDR NEWMAN also drafts and submits in final form the enlisted evaluations for all personnel assigned to the Branch office, including all legalmen assigned to any defense function.

LCDR NEWMAN normally only serves as a Trial Counsel in the government prosecution of criminal cases at Mayport. He generally opposes Branch office personnel that work directly for him.

Appellate Exhibit IV.

Appellant does not allege actual prejudice and recognizes that the rule of *United States v. Hubbard* is applicable under the circumstances of this case. Rather, appellant advocates that the "appearance of evil" which the aforementioned situation describes must be avoided. The record of trial evinces an exceptional, imaginative, unhampered and efficient defense. Seven pretrial motions were submitted and argued in detail; an advantageous pretrial agreement was negotiated; extensive presentencing evidence was proffered. There is clearly no evidence whatsoever of any prejudice to appellant, nor is there even a socalled "appearance of evil" evident in appellant's extensive and vigorous representation. Accordingly, we find Assignment of Error II without merit.

### III

PREJUDICIAL ERROR OCCURRED WHEN THE MILITARY JUDGE FAILED TO CONDUCT A SUFFICIENTLY DETAILED INQUIRY OF THE APPELLANT AS TO THE NATURE OF DETAILED DEFENSE COUNSEL'S CONFLICT OF INTEREST.

■ As noted earlier, an extensive motion concerning the relationship of trial and defense counsel was litigated. Before the military judge ruled on that motion, the following colloquy took place:

MJ: Have you had an opportunity to explain the relationship you have with the assistant trial counsel to your accused?

DDC: Yes, sir, I have.

MJ: Alright. I'm going to address a couple of questions to Nicholson and if you'd like some time to talk with him, I'll recess the court briefly.

IMC: Yes, sir.

MJ: Alright. The court will be in recess.

The court recessed at 1637 hours, 1 October 1979.

The court was called to order at 1641 hours, 1 October 1979.

MJ: The court will come to order. All persons who were present when the court recessed are again present. Nicholson, has Lieutenant Williams explained to you the relationship he has with the assistant trial counsel?

ACC: Yes, he had.

MJ: Has he discussed that with you thoroughly.

ACC: Yes, sir.

MJ: Is there anything you don't understand about the relationship he has with Lieutenant Commander Newman as a subordinate?

ACC: No, sir.

MJ: Knowing these things, do you still desire to have Lieutenant Williams represent you as asistant (sic) defense counsel in this case?

ACC: Yes, sir.

MJ: The motion by the defense for appropriate relief asking for the disqualification of and excusal of Lieutenant Commander Newman will be denied.

■ Where a single counsel represents multiple clients and the trial judge knows or should reasonably know of a conflict of interest, it is the responsibility of the trial court to bring the fact of its existence and the resulting dangers which are reasonably foreseeable to the attention of each affected defendant so that he can make an in-

formed judgment at the time as to whether he wishes to continue with his present counsel or wishes new counsel. *United States v. Breese*, 11 M.J. 17 (C.M.A.1981); *United States v. Davis*, 3 M.J. 430 (C.M.A. 1977); *United States v. Cahill*, 3 M.J. 1030 (N.C.M.R.1977). Although *Breese, Davis,* and *Cahill* address the conflicts of interest which multiple representation of criminal codefendants presents, other forms of potential conflict of interests also require similar concern for a trial judge. *See generally Maxwell v. Superior Court of Los Angeles County*, 30 Cr.L. 2390 (Cal.S.Ct. 28 January 1982):

Here, the military judge was clearly made aware of a potential conflict of interest, and he conducted an inquiry concerning appellant's knowledge of the alleged conflict of interest. Considering the nature of the alleged conflict, the extensive motion argument in appellant's presence which addressed that issue, the recess afforded counsel and appellant to discuss the problem, the fact that no actual conflict of interest existed, and the extent of the inquiry by the military judge, we find no merit to Assignment of Error III.

Accordingly, the findings and sentence as approved on review below are affirmed.

Judge BOHLEN concurs.

BAUM, Judge (concurring):

I concur with the principal opinion's resolution of the issues in this case but, in addition, believe it is essential to address the ethical implications in Assignment of Error II. That assignment challenges the preparation by the assistant trial counsel of fitness report drafts evaluating the performance of detailed defense counsel. This very problem was recently addressed by the American Bar Association—(ABA) Standing Committee on Ethics and Professional Responsibility, in its Informal Opinion, No. 1474 (1981). The following question was posed to that committee:

> What is the ethical propriety of a military lawyer serving as counsel in a criminal matter when the prosecutor, investigating officer or military magistrate exercises command authority over that lawyer, including the authority to write efficiency reports on the lawyer?

That question was answered as follows:

> No matter how fair the commanding officer may be, there is an inherent conflict between zealously representing a client and conducting oneself in a manner calculated to win the approval and favor of the officer exercising command authority. Consequently, a military lawyer, except in the limited circumstances provided by DR 5–101(A),* should never voluntarily represent a client if the lawyer has to oppose an officer who prepares efficiency reports on the lawyer or otherwise has command authority over the lawyer. Nor should a military lawyer assign as opposing counsel to himself a subordinate over whom he exercises command authority. Pleading on behalf of a client in an investigative or military magistrate proceeding before an officer exercising command authority over the lawyer should also be avoided whenever practicable.[1]

---

\* Disciplinary Rule 5–101(A), ABA Cannons of Professional Ethics, No. 5, reads as follows:

DR 5–101 Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.

(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

[1] This opinion does not, however, preclude a lawyer from appearing before or opposing another military lawyer who is senior in military rank but does not exercise command authority over him.

It was also stated in this ABA opinion that:

> The ethical requirements discussed above—that a lawyer must provide zealous representation, and give unswerving loyalty to a client free from any influence that might weigh against that fidelity—clearly are violated where a military lawyer's opposing counsel in a court martial or related proceeding is an officer who has command authority over him. The sole exception is where the client has asked that the lawyer represent the client

after full disclosure of the potential for divided loyalties as provided for in DR 5–101(A).

The military judge's colloquy with appellant concerning this matter and appellant's expressed desire for continued representation by counsel, after disclosure of the potential conflict, brought this situation within the sole exception noted in the ABA opinion and, thereby, avoided an ethical violation on the part of the defense counsel. That exception, however, has no bearing on the question of whether the act of assigning defense counsel to this case constituted an ethical violation. If the assistant trial counsel was responsible for the detailing of his subordinate as his adversary, it would appear that such action violated the terms of the above quoted ABA opinion. If there was an ethical violation in this respect by the assistant trial counsel it did not prejudicially impinge upon the representation afforded appellant, however. As explained in the lead opinion, there is no indication in the record of diminished representation of appellant and, thus, no prejudice from the detailed defense counsel's being assigned at the outset and later remaining on the case as the individual military counsel's associate. I think it essential, however, that appropriate authorities within the Naval service who are responsible for the assignment of court-martial counsel understand that our affirmation of the findings and sentence in this case does not in any way condone the detailing of trial counsel and defense counsel to a case when the trial counsel has the authority to prepare fitness reports on the defense counsel. Presumably, such situations will cease to occur in the Navy upon the establishment of a separate command structure for defense counsel where fitness reports on defense counsel will be prepared only by other defense counsel.[1]

---

1. A pilot program for just such a defense counsel command was publicly announced by the Judge Advocate General of the Navy on 26 May 1982 during a panel discussion on professional responsibility at the Seventh Annual Homer Ferguson Conference on Appellate Advocacy sponsored by the U. S. Court of Military Appeals and the Military Law Institute.