UNITED STATES, Appellee,

v.

Michael K. NICHOLSON, Seaman Apprentice, U.S. Navy, Appellant.

No. 44,500.
NMCM No. 80–0963.

U.S. Court of Military Appeals.

June 27, 1983.

For Appellant: Major James P. Axelrod, USMC (on petition).

For Appellee: Commander W.J. Hughes, JAGC, USN, and Lieutenant Commander Michael R. McGuire, JAGC, USN (on petition).

*Opinion of the Court*

EVERETT, Chief Judge:

A military judge sitting alone as a general court-martial at Mayport, Florida, convicted appellant, pursuant to his pleas, of conspiracy to commit premeditated murder and of unpremeditated murder, in violation of Articles 81 and 118, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 918, respectively. Thereafter, appellant was sentenced to a dishonorable discharge, confinement at hard labor for life, total forfeitures, and reduction to the lowest enlisted grade. Because the original convening authority was disqualified from taking action on the record, the case was forwarded to a second officer empowered to exercise general court-martial jurisdiction. In accordance with the terms of a pretrial agreement between appellant and the original convening authority, the substitute convening authority reduced the term of confinement to 40 years, but in all other respects he approved the trial results. The United States Navy-Marine Corps Court of Military Review affirmed. 13 M.J. 928 (1982).

We granted review of appellant's complaint, originally lodged at trial and consistently pursued thereafter, concerning the participation at trial of the detailed defense counsel's immediate military superior as assistant trial counsel. 15 M.J. 334. While this situation is wholly inimical to the appearance of integrity of the military justice system and, accordingly, care should be exercised to ensure that it is not repeated, we are satisfied that under the circumstances of this case, appellant was not prejudiced.

I

Prior to entering pleas, the defense moved to have the assistant trial counsel removed from the proceedings on the

ground that he was disqualified from performing in that capacity because he had prepared draft fitness reports evaluating the duty performance of the detailed defense counsel. The facts developed at trial and in stipulations of fact indicate that Lieutenant Commander Newman—the assistant trial counsel in this case and also the assistant government counsel at the Article 32 proceeding herein—was then also the Head of the Naval Legal Service Branch Office in Mayport, Florida, to which detailed defense counsel was then assigned, and he had been serving in that capacity for the previous year and a half. In that role, Lieutenant Commander Newman had "administrative responsibility for the daily operation of" that office and he was "the military supervisor for all persons employed" there. Although, "for purposes of criminal prosecutions," the office was "loosely divided" along functional defense and prosecution lines, "the senior defense counsel at the Branch Office ha[d] no input into the officer ... [efficiency] report of the junior defense counsel," one of whom was appellant's detailed defense counsel. Instead, Lieutenant Commander Newman had the responsibility of drafting in "rough" form detailed defense counsel's "annual fitness reports." [1] It was routine for Newman to serve as trial counsel in cases tried at Mayport and to oppose personnel from his branch office who worked directly for him.

Apparently perceiving a possible conflict of interest, the military judge specifically inquired of both the individual military counsel and the detailed defense counsel whether either had felt inhibited in his representation of appellant by the fact that Lieutenant Commander Newman was the reporting senior for the detailed defense counsel (DDC).[2] The individual counsel replied negatively, and the detailed counsel responded:

[I]t is my position that there is nothing that Lieutenant Commander Newman could do to intimidate me or dampen my enthusiasm or my obligation to defend ... [appellant] to the best of my ability. Subconsciously, I don't know. I have not felt intimidated and I will continue to do what I consider, as well as my co-counsel considers, to be the best for our client.

Additionally, the following colloquy occurred:

MJ: Have you had an opportunity to explain the relationship you have with the assistant trial counsel to your accused?

DDC: Yes, sir, I have.

MJ: All right. I'm going to address a couple of questions to Nicholson and if you'd like some time to talk with him, I'll recess the court briefly.

IMC: Yes, sir.

MJ: All right. The court will be in recess.

The court recessed at 1637 hours, 1 October 1979.

The court was called to order at 1641 hours, 1 October 1979.

MJ: The Court will come to order. All persons who were present when the court recessed are again present. Nicholson, has Lieutenant Williams explained to you the relationship he has with the assistant trial counsel?

ACC: Yes, he has.

MJ: Has he discussed that with you thoroughly?

ACC: Yes, sir.

MJ: Is there anything you don't understand about the relationship he has with Lieutenant Commander Newman as a subordinate?

ACC: No, sir.

MJ: Knowing these things, do you still desire to have Lieutenant Williams rep-

1. The officer efficiency reports out of Mayport actually were signed in final form by the Commanding Officer, Naval Legal Service Office, NAS Jacksonville, Florida. Lieutenant Commander Newman, did, however, sign the performance evaluations for enlisted personnel as-

signed to the Mayport branch office, including all legalmen assigned to the defense function.

2. Appellant's individual military counsel in this case was then permanently assigned as Head of the Naval Legal Service Branch Office in Guantanamo Bay, Cuba.

resent you as assistant defense counsel in this case?

ACC: Yes, sir.

MJ: The motion by the defense for appropriate relief asking for the disqualification of and excusal of Lieutenant Commander Newman will be denied.

## II

This Court addressed a similar situation in *United States v. Hubbard,* 20 U.S.C.M.A. 482, 43 C.M.R. 322 (1971). There, the trial counsel, a major, also was the deputy staff judge advocate and, in that capacity, "was the 'indorser for efficiency report purposes' of trial defense and assistant defense counsel, both captains." We noted:

> The appellate defense attack on this relationship expressly disavows any insinuation of impropriety in action or motive in the conduct of this case. The appellate defense counsel does declare, however, that the relationship of trial counsel in this case has such an intrinsic appearance of evil as to amount to a deprivation of due process. This argument continues that the organizational arrangement harbors a "subtle coercive phenomena," that prevents recognition of specific prejudice.

*Id.* at 483, 43 C.M.R. at 323. Notwithstanding this argument, a majority of this Court "decline[d] to hold that such a relationship is prejudicial *per se.*" Instead, we concluded "that a relationship of . . . [that] kind" more appropriately "should be closely scrutinized for possible prejudice to an accused." *Id.* at 484, 43 C.M.R. at 324. Doing so there, we were "convinced the appellant's defense counsel was unrestrained in his actions and that the appellant's choice of counsel was uncompromised." *Id.* at 485, 43 C.M.R. at 325.

Appellant acknowledges our majority opinion in *Hubbard,* but, in essence, he asks us to reconsider that position and to embrace the dissenting position of Judge Ferguson in that case that such a relationship is generally prejudicial, without resort to testing for specific prejudice.

Much of Judge Ferguson's rationale was recently recognized by the American Bar Association's Standing Committee on Ethics and Professional Responsibility in its Informal Opinion No. 1474 (1982). There, the committee addressed the following question:

> What is the ethical propriety of a military lawyer serving as counsel in a criminal matter when the prosecutor, investigating officer or military magistrate exercises command authority over that lawyer, including the authority to write efficiency reports on the lawyer?

The committee responded, in part:

> The ethical requirements . . . that a lawyer must provide zealous representation, and give unswerving loyalty to a client free from any influence that might weigh against that fidelity—clearly are violated where a military lawyer's opposing counsel in a court martial or related proceeding is an officer who has command authority over him.
>
>     *     *     *     *     *     *
>
> No matter how fair the commanding officer may be, there is an inherent conflict between zealously representing a client and conducting oneself in a manner calculated to win the approval and favor of the officer exercising command authority.

"Consequently," the committee concluded, a military lawyer . . . should never voluntarily represent a client if the lawyer has to oppose an officer who prepares efficiency reports on the lawyer or otherwise has command authority over the lawyer. Nor should a military lawyer assign as opposing counsel to himself a subordinate over whom he exercises command authority.

However, the committee did recognize one exception to its conclusion that it violates ethical prescriptions for a lawyer to permit himself to be placed in the position of opposing a military superior who prepares his efficiency reports or who otherwise exercises "command authority over him": [3]

**3.** In a footnote to its opinion, the committee made clear the limits of its opinion:

The sole exception is where the client has asked that the lawyer represent the client after full disclosure of the potential for divided loyalties as provided for in DR 5–101(A).

Disciplinary Rule 5–101, Model Code of Professional Responsibility, provides:

DR 5–101. Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.

(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

(Footnote omitted.)

The record in this case reflects that this "sole exception" is fully applicable here. The military judge established clearly on the record that the defense counsel had fully explained to appellant his relationship with the assistant trial counsel; that appellant had no questions about this relationship; and that, notwithstanding the relationship, it was his desire to continue to be represented by detailed defense counsel. Moreover, there are no circumstances in this case which lead us to extend the reach of the general proscription against such a relationship beyond that set out in the Informal Opinion. As the court below found in its majority opinion:

The record of trial evinces an exceptional, imaginative, unhampered and efficient defense. Seven pretrial motions were submitted and argued in detail; an advantageous pretrial agreement was negotiated; extensive presentencing evidence was proffered.

*Id.* at 931. In conjunction with the absolute disclaimer by both defense counsel of having felt any restraints in their efforts as a result of this relationship, we are entirely satisfied that appellant's interests at trial

This opinion does not, however, preclude a lawyer from appearing before or opposing another military lawyer who is senior in military rank but does not exercise command authority over him.

were fully protected. *See United States v. Hubbard, supra.*

We note, however, that the ABA committee's opinion recognizes no exception in the Disciplinary Rules for the counsel who assigns as his opposing counsel a lawyer who is a command subordinate of himself, as Lieutenant Commander Newman did here. The Government in its brief has advised us that the Commander, Naval Legal Service Command, has issued a memorandum precluding a defense counsel from opposing any officer who exercises administrative control over him. Presumably the thrust of this prohibition includes those who *assign* such defense counsel to these untenable positions.

As observed in *United States v. Hubbard, supra* at 484, 43 C.M.R. at 324, even in very small legal offices certain "improvisation" would avoid situations like the one posed in this case. Judge Baum noted in his concurring opinion below that

[a] pilot program for just such a [separate] defense counsel command was publicly announced by the Judge Advocate General of the Navy on 26 May 1982 during a panel discussion on professional responsibility at the Seventh Annual Homer Ferguson Conference on Appellate Advocacy sponsored by the U.S. Court of Military Appeals and the Military Law Institute.

*United States v. Nicholson, supra* at 933 n. 1. Such programs apparently have worked well in the Army and the Air Force and perhaps will assist the Navy in avoiding such questions as the ones involved in this case.

The decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judge FLETCHER concurs.

American Bar Association's Standing Committee on Ethics and Professional Responsibility, Informal Opinion No. 1474 (1982), n. 3.

COOK, Judge (concurring with reservations):

In the situation before us we deal with perceptions and with realities. Undoubtedly the perceptions created by a defense counsel being opposed by his rating officer are contrary to the concept of fairness intended by the Uniform Code of Military Justice, and are ideally best eliminated by the establishment of a separate, insulated defense counsel system. In addition, there are the subtle realities of a system where counsel must evaluate opposing counsel for either side. I agree that such relationships should be avoided where possible. However, the military justice system does not always operate in ideal situations, and there will be times dictated by military necessity where such relationships cannot as reasonably be avoided as might be possible in the civilian criminal law system. Thus, an inflexible rule should not be imposed. Where this situation arises, inquiry by the military judge and advisement of the accused seem the best way to avoid real or imagined improprieties. That was done here, and any apparent conflicts have been alleviated.