**UNITED STATES, Appellee,**

v.

**Mickey E. DAVIS, Torpedoman's Mate Seaman Apprentice U.S. Navy, Appellant.**

No. 45,569.
NMCM 82 3822.

U.S. Court of Military Appeals.

May 13, 1985.

For Appellant: *Lieutenant Commander Cynthia J. Clemens*, JAGC, USN (argued); *Lieutenant Commander William A. De-Cicco*, JAGC, USN, and *Lieutenant Lois B. Agronick*, JAGC, USNR (on brief); *Lieutenant Commander David S. Durbin*, JAGC, USNR, and *Lieutenant Commander Frederick N. Ottie*, JAGC, USN.

For Appellee: *Major J.S. Uberman*, USMC (argued); *Captain W. J. Hughes*, JAGC, USN (on brief); *Lieutenant William V. Cerbone, Jr.*, JAGC, USNR.

*Opinion*

EVERETT, Chief Judge:

A general court-martial consisting of a military judge alone convicted appellant of five specifications of unauthorized absence, in violation of Article 86, Uniform Code of Military Justice, 10 U.S.C. § 886, and sentenced him to a bad-conduct discharge, confinement at hard labor for 6 months, total forfeitures, and reduction to the lowest pay grade. Except for suspending the confinement in excess of 5 months, the convening authority approved these results; and the Court of Military Review affirmed. This Court granted review to consider whether the Article 32, UCMJ, 10 U.S.C. § 832, investigating officer should have withdrawn after being challenged by the defense. 15 M.J. 460 (1983).

I

The Article 32, 10 U.S.C. § 832, hearing took place at the Naval Legal Service Office, Philadelphia Naval Base, on April 22, 1982. Davis was represented by detailed military counsel and civilian counsel. They conducted *voir dire* of the investigating officer, Commander Robert Boasberg, Jr.;

and in response to their questions, he stated that he was executive officer of the Legal Service Office; was in the military defense counsel's "direct chain-of-command"; and had a responsibility to supervise and evaluate her. Also, he was chief of military justice in that office and was responsible for docketing and scheduling cases.

At this point, the defense requested that the investigating officer recuse himself on the grounds that by reason of his duties he could not be impartial and that his supervisory relationship to the detailed defense counsel might impair her effectiveness in representing Davis during the pretrial investigation. In support of this request, the civilian counsel explained:

My second point is your relationship with the defense counsel. I'm very concerned that, because of the delicate relationship you have as someone who must evaluate and actually act as the boss or as like a senior partner for a younger attorney, that that may chill or dampen the zealousness with which my co-counsel is going to present the defenses in this case.

Thereafter, this colloquy ensued:

IO [Investigating Officer]: Will that dampen—let me ask you a few questions, counsel. Will that dampen your ardor in defending your client?

CC [Civilian Counsel]: Certainly not, but——

IO: How would that dampen—let me ask you——

CC: Let me explain. I have to rely to a large extent on my co-counsel here as a civilian in the military forum and I feel that this relationship has a crippling effect on how far we can go.

GC [Government Counsel]: I'd like to make a statement here. It's—Lieutenant Glynn is detailed and her job is a defense counsel. In her job as defense counsel she must exercise her zeal and all of her efforts to protect not the judge, not me, not the—Commander Boasberg, to protect the accused right there. Now, if she——

CC: Well, this is great for you to say, you're the government's attorney. Now here's the—she's supposed to be putting her future evaluations on the line or whatever now for this man and I think it would be much simpler simply to get another officer in here and do the Article 32 with him or her and not put her in this position. You know, what you're asking her to do is to put herself in a vulnerable position where she can't do her job in almost a conflict of interests. That may be overstating it a bit——

IO: Excuse me. I think—all right—I think perhaps you are. Ah——

CC: And my sense is that there's something very unfair about this and I object strenuously to continuing.

IO: All right. That's fine. Lieutenant Glynn, you are a defense—stay seated please—what is your responsibility as a naval officer defending a client?

DC: I would concur with co-counsel. I would request that——

IO: I didn't ask that. I asked, what do you—what is your duty as defense counsel, as a naval officer?

DC: My duty is to represent my client.

IO: Would you say your duty is to represent your client in every—as aggressively as you possibly can, fully compliant with the American Bar Association Standards, with every means that is legal and moral and ethical to fulfill your profession?

DC: I would concur with that estimate.

IO: I will assure you that if you do any less than that it will only be in that regard that you would ever get anything adverse as far as your report from me. I would expect you to do your job aggressively and to the utmost of your ability. And I don't think—have I ever given you any indication that I'd expect less?

DC: (No audible response)

IO: I'd like you to answer the question. You are a lawyer. You're an advocate before this tribunal and I think you can speak up for yourself. Would you do any less? Do you feel that you have to do less?

DC: I feel that I cannot adequately represent my client when the Executive Officer of the Legal Services for which I work acts as an Investigating Officer in an Article 32.

IO: Why is that, please?

DC: Because I feel that the chain of command is such that even the possibility that there would be an adverse determination of me as a—at a later date any possible determination made by an executive officer who also acts as an investigating officer is something that I wouldn't want to have to subject myself to and I don't feel that it's the proper role of an executive officer to act as an investigating officer.

IO: Now you're—excuse me——

DC: For my purposes.

IO: For your purposes. This is a subjective determination.

DC: That's correct.

IO: So you would compromise your role as an attorney——

DC: I did not say——

IO: Who has a responsibility as a member of the Bar of the State of New York, I believe?

DC: I'm not compromising my role, I'm objecting to the fact that an executive officer is acting as investigating officer in an Article 32——

IO: Fine. In that capacity I recognize your objection. Are you able to do your job as an attorney fully and competently as you were required by your oath to do?

CC: May I interrupt here?

IO: No, you may not.

IO: Can you answer the question?

CC: Well, I think this demonstrates exactly what I'm saying. How do you—how can you expect her now after this exchange has gone on to continue in this conference here today?

IO: Because I actually expect counsel that she will do her maximum, to do her best job. I'm sorry I'm—and as far—and on that ground I will deny your objection and I do not think you have established in

any way that Lieutenant Glynn is incompetent to perform as counsel if I am here as investigating officer.

CC: I think she's already stated—I mean, I think it is for the individual attorney to examine the position they're in and reach a conclusion as to how they can best assert the interests of the client. I think here my co-counsel has stated, and she's reached a conclusion. I don't think it's your role now to co-opt that—or for you to make the decision. Sitting up there, I think, sure you can reasonably reach the conclusion you've reached, but I think sitting down here it's another matter.

IO: I appreciate your opinion, counsel. I expect more of the attorneys who work in this office. As far as the other grounds, I stated before and I'll say it again, there's nothing that I've said or done that would in any way convince me, even reasonably, that I am unable to be fair and impartial in examining the evidence presented before me and reaching a determination as to disposition—the recommendation of the disposition to the convening authority. Whether that be dismissal of the charges, or general court-martial or anything in between in my capacity. So your objection is noted, but I will not recuse myself. Of course, it is always up to the convening authority to make a determination and, if at all possible, I will have this—your request and the questions and answers leading up to it verbatim.

At trial a month later the defense renewed its objection to the investigating officer and moved unsuccessfully that either the charges be dismissed or the Article 32 investigation be reopened. Defense Counsel relied in part on Informal Opinion No. 1474, which was issued on January 18, 1982, by the American Bar Association's Standing Committee on Ethics and Professional Responsibility. This opinion contains the following advice:

> Pleading on behalf of a client in an investigative or military magistrate proceeding before an officer exercising command

authority over the lawyer should also be avoided whenever practicable.

Opinion at 5 (footnote omitted).

In denying the defense motion, the military judge found "from the record that there is clear and convincing evidence that no specific prejudice has resulted to the accused in this case."

## II

■ This Court perceives nothing in the nature of the duties performed by the executive officer which would have precluded his conducting the fair and impartial pretrial investigation required by Article 32 of the Uniform Code. Moreover, the record gives no indication that Commander Boasberg failed in any way to be fair and impartial.

More troublesome is the possible effect on the military defense counsel of the executive officer's service as Article 32 investigator. The Informal Opinion cited by defense counsel at appellant's trial was concerned that a defense counsel's independence and zeal might be reduced if he appeared in a hearing before someone who was his military superior and evaluated his performance. Relevant to this situation—and referred to by the Informal Opinion—is Disciplinary Rule 5–101 of the American Bar Association's Model Code of Professional Responsibility, which states:

Refusing Employment When the Interests of the Lawyer May Impair His Independent Professional Judgment.

(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

(Footnote omitted.)

Relying on Informal Opinion 1474 and Disciplinary Rule 5–101, this Court has expressed concern about the situation that

may arise when the prosecutor in a court-martial is the defense counsel's military superior. *United States v. Nicholson*, 15 M.J. 436 (C.M.A. 1983). We focused on the danger that the defense counsel's zeal in representing his client may wane when he appears against someone who exercises command authority over him. Moreover, we recognized that neither an accused nor the public will have confidence in the integrity of military justice when there is reasonable suspicion that defense counsel may be consciously or subconsciously inhibited in performing his duties because he fears incurring the displeasure of the prosecutor who rates him for promotion.

A Department of Defense Task Force that studied the Administration of Military Justice 15 years ago also was troubled by the possibility that certain relationships might impair the ability of military defense counsel to exercise independent professional judgment. Therefore, the Task Force recommended that defense counsel be separated organizationally from other legal activities; and Secretary of Defense Melvin Laird directed the armed services to implement this recommendation. Ultimately, the result was the Air Force's creation of its Area Defense Counsel program; the Army's establishment of a Trial Defense Service; and the Navy's development of Legal Service Offices separate from staff judge advocates.[1]

These reforms undoubtedly reduced the occasions when accused persons might reasonably complain that the independent professional judgment of their defense counsel had been impaired in some way. However, *Nicholson* and the present case demonstrate that situations still may arise—at least, in the Navy—where an accused has some basis for contending that the independence of his defense counsel has been curtailed.

In weighing such contentions, this Court must recognize that military necessity may require relaxation of some of the rules

---

1. The Judge Advocate General of the Navy assumed the additional duty of Commanding Officer of the Legal Services Command.

applied in civilian courts. Indeed, by including in its Informal Opinion the words "whenever practicable," the American Bar Association's Standing Committee on Ethics and Professional Responsibility undoubtedly was acknowledging that military authorities should be granted some leeway to cope with exigent conditions.

Furthermore, we do not wish to establish a rule which will lead to the appointment of line officers, rather than military lawyers, as investigating officers. An Article 32 investigation "is judicial in nature," *United States v. Payne*, 3 M.J. 354, 355 n.5 (C.M.A. 1977); *United States v. Samuels*, 10 U.S.C.M.A. 206, 27 C.M.R. 280 (1959); and use of legally trained persons to perform the judicial duties involved avoids some of the complaints lodged against lay judges. *See United States v. Payne, supra* n.6.

In the present case, however, we have not been informed of any military exigency requiring or leading to the appointment of Commander Boasberg as the investigating officer; and there is no indication that, if he had not been detailed to perform this duty, it would have been necessary to appoint a nonlawyer to conduct the investigation. Neither at trial nor on appeal has the Government contended that Boasberg was the only lawyer at the Philadelphia Legal Service Office who was available and qualified to serve as the Article 32 investigating officer.

Disciplinary Rule 5–101 requires that a lawyer disclose to his client any circumstance that may impair his exercise of professional judgment on the client's behalf. Consistent with this Rule, a military defense counsel should disclose to his client any relationship which he believes might inhibit his representation of that client; and this duty of disclosure exists at any stage of the proceedings. Presumably, defense counsel made this disclosure to Davis and—unlike the accused in *Nicholson*—he did not consent to proceed despite the pos-

sible impairment of the lawyer's ability to represent him.

At that point, defense counsel had the responsibility to bring the problem to the attention of the officer conducting the Article 32 investigation. Even though this investigation is less adversarial than a trial, an accused is entitled to zealous representation by his defense counsel at this stage. Indeed, such representation sometimes may even prevent the occurrence of any trial at all.

Once defense counsel asserted that, because of Boasberg's supervisory relationship to her, she could not "adequately represent" Davis, the proceeding should not have continued without some type of remedial action. Otherwise, the pretrial investigation was vulnerable to plausible—and unnecessary—criticism that appellant could not receive during the Article 32 investigation the unfettered representation which Congress intended him to have.

One alternative would have been to substitute defense counsel; but this would have interfered with an existing attorney-client relationship. A more feasible alternative would have been to replace Commander Boasberg as investigating officer. The inconvenience and delay resulting from this action would have been outweighed by the policy of both the legal profession and the Department of Defense to avoid situations in which the independent professional judgment of a defense counsel is—or appears to be—impaired. [2]

## III

■ Since the Article 32 investigation continued without any change of investigating officer or defense counsel, the possibility of prejudice to appellant must be examined. The starting point is *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), where counsel had not been provided to defendant at the preliminary hearing. Although holding that coun-

---

2. In appointing trial personnel, a convening authority and his staff judge advocate should take into account any military relationships that la-

ter may lead to a claim that defense counsel's professional judgment has been impaired.

sel was constitutionally required, the Supreme Court remanded the case to the state courts to consider "whether the denial of counsel at the preliminary hearing was harmless error under *Chapman v. California*, 386 U.S. 18 [87 S.Ct. 824, 17 L.Ed.2d 705] (1967)." 399 U.S. at 11, 90 S.Ct. at 2004. Similarly, we see no grounds to reverse appellant's conviction if the record clearly demonstrates that no prejudice resulted from the error. *Cf. United States v. Remai*, 19 M.J. 229 (C.M.A. 1985).

The military judge found by "clear and convincing evidence that no specific prejudice" was suffered by appellant. We need not pause to consider whether the judge applied the correct burden of proof in evaluating whether appellant had been prejudiced by the error involved here. Even if the absence of prejudice must be demonstrated beyond reasonable doubt, the Government has carried its burden.

Nothing in the record gives even a slight hint that the defense counsel was inhibited in any way in her efforts to defend Davis. At the Article 32 hearing—as well as later at trial—the Government relied on documentary evidence; and even the most vigorous and enthusiastic defense counsel could have done no more than was done by appellant's lawyers. The length of the unauthorized absences reflected in the prosecution's documentary evidence virtually compelled referral of the charges to a general court-martial. At trial defense counsel had spectacular success in having a desertion charge against Davis reduced to an unauthorized absence and in obtaining for appellant a sentence that was little more than a special court-martial could have adjudged; but we see no reason to believe that some other defense counsel could have achieved similar favorable results at the stage of the Article 32 investigation.

## IV

Although we have concluded that some remedial action should have been taken after the defense lodged its objection to the investigating officer's continued participation, appellant was not prejudiced. Accordingly, the decision of the United States Navy-Marine Corps Court of Military Review is affirmed.

Judge FLETCHER did not participate.

COX, Judge (concurring in the result):

I concur in the result. I also concur, wholeheartedly, in Chief Judge Everett's analysis of the facts of this case as presented in Part I of his opinion. I just want to make it clear, however, that I do not perceive any evil or potential adverse effects on counsel merely because counsel's superior sits as the Article 32 Investigating Officer (IO). Article 32, Uniform Code of Military Justice, 10 U.S.C. § 832. To the contrary, I can see a benefit to the accused—*i.e.*, where the Article 32 IO has great confidence and trust in the legal and forensic abilities of the counsel whom he supervises. But, more importantly, I am satisfied that the safeguards inherent in our system of justice under the Uniform Code will adequately protect the remote possibility that the superior-subordinate relationship would affect defense counsel's representation of the accused.

The question that should be decided on a case-by-case basis is whether there has been actual abuse of his role as an Article 32 IO, or whether counsel has been unable to perform effectively his role by virtue of the relationship. These are not perceptions but articulated facts, the same sort of facts which render any Article 32 procedure defective.

Our system of military justice is working well. The President of the United States and the Congress have, again and again, demonstrated their concern over military justice to such an extent that we now have competent, certified counsel participating in every special and general court-martial. We have an independent military judge to insure a fair proceeding. We have post-trial reviews which we thoroughly scrutinize. We have competent appellate counsel who comb every record for even a hint of error. I am not willing to tamper with the system

by suggesting changes to the system that will impede the full utilization of the limited number of trained military lawyers available to a convening authority. I want to encourage the use of lawyers as Article 32 investigating officers, not discourage it.

We also should be extremely careful in establishing, or even suggesting, any rules which would require recusal by Article 32 investigating officers (or judges) or disqualification by counsel on mere assertions based upon perceptions or feelings rather than an actual showing of operative facts.

Under the facts of this case, the issue was a specious one. There may well be a case wherein the Article 32 investigation is tainted by the relationship of the investigating officer to counsel, but I want to see facts and circumstances which prove that taint before I act.