UNITED STATES, Appellee,

v.

Alfredo L. CARITATIVO, Chief
Warrant Officer (W–2), U.S.
Coast Guard, Appellant.

No. 67,584.
CMR Misc. No. 002–69–89.

U.S. Court of Military Appeals.

Argued Nov. 4, 1992.

Decided July 19, 1993.

For Appellant: *Lieutenant Commander Allen Lotz* (argued); *Lieutenant Commander G Arthur Robbins* (on brief).

For Appellee: *Lieutenant Commander Charles J. Bennardini* (argued).

## Opinion of the Court

SULLIVAN, Chief Judge:

In March 1988, appellant was tried by a general court-martial composed of a military judge and officer members at the Office of Coast Guard Commander, Maintenance and Logistics Command Pacific (MLCPAC), in Alameda, California. Contrary to his pleas, he was convicted of three specifications of falsely signing official documents and one specification of making a false official statement in violation of Article 107, Uniform Code of Military Justice, 10 USC § 907, and wrongful appropriation of $2,598.00, in violation of Article 121, UCMJ, 10 USC § 921. Appellant was sentenced to confinement for 3 months, loss of 100 numbers in precedence, total forfeitures for 12 months, and a fine of $8,000.00. On August 16, 1988, the convening authority approved these findings of guilty except for one specification of falsely signing an official document, which he disapproved. He also reassessed the sentence and approved it except for reducing forfeitures to $1,396.00 per month for 6 months.

On May 11, 1989, the Deputy General Counsel[1] of the Department of Transportation referred this case to the Coast Guard Court of Military Review, pursuant to Article 69(a), UCMJ, 10 USC § 869(a)(1983). The Coast Guard Court of Military Review subsequently ordered a *DuBay*[2] evidentiary hearing to investigate claims of conflict of interests involving appellant's defense counsel and unlawful command influence by the staff judge advocate. (Order dated Nov. 20, 1989.) The Chief Trial Judge of the Coast Guard conducted the *DuBay* hearing on February 13–15, 1991. After

concluding that these claims lacked merit, he returned the record of trial to the Coast Guard Court of Military Review, which, after hearing additional oral argument, affirmed the findings and sentence on October 30, 1991. 33 MJ 865.

Relying on Article 67(a)(2), UCMJ, 10 USC § 867(a)(2)(1989), appellant requested on November 12, 1991, that the General Counsel of the Department of Transportation certify three issues to this Court regarding independence of trial defense counsel, existence of command influence, and the impartiality of the staff judge advocate. The General Counsel did not act on this request within the required period of time. On December 27, 1991, appellant mailed to this Court a petition for grant of review. *See* Art. 67(a)(3).

On June 18, 1992, this Court granted review of the following four issues:

### I

WHETHER THE COURT OF MILITARY REVIEW ERRED WHEN IT CONCLUDED THAT TRIAL DEFENSE COUNSEL WHO WORKED DIRECTLY FOR THE STAFF JUDGE ADVOCATE DID NOT EXPERIENCE AN UNWAIVED CONFLICT OF INTEREST THAT MANDATES SETTING ASIDE THE FINDINGS OF GUILTY AND SENTENCE.

### II

WHETHER THE COURT OF MILITARY REVIEW ERRED WHEN IT CONCLUDED THAT THE STAFF JUDGE ADVOCATE'S EFFORTS DID NOT CONSTITUTE UNLAWFUL COMMAND INFLUENCE.

\* \* \*

---

1. In fact the Deputy General Counsel was the Acting General Counsel on this date. *See* —— MJ —— (Daily Journal June 15, 1993).

2. *United States v. DuBay,* 17 USCMA 147, 37 CMR 411 (1967).

### III

WHETHER THE COURT OF MILITARY REVIEW ERRED WHEN IT CONCLUDED THAT CONFLICT OF INTEREST DID NOT, UNDER RULE FOR COURTS–MARTIAL 1106, DISQUALIFY THE STAFF JUDGE ADVOCATE FROM PROVIDING THE POST-TRIAL RECOMMENDATION TO THE CONVENING AUTHORITY.

### IV

WHETHER THE MEANS BY WHICH THE JUDGE ADVOCATE GENERAL SELECTS CASES TO CERTIFY FOR REVIEW TO THE UNITED STATES COURT OF MILITARY APPEALS, PURSUANT TO ARTICLE 67(a)(2) OF THE UCMJ, COMPORTS WITH DUE PROCESS.

We resolve these issues against appellant. *See generally United States v. Allen*, 33 MJ 209, 212 (CMA 1991).

The basic facts of this case are as follows: Appellant, a Chief Warrant Officer Second Class (CWO–2) stationed aboard the United States Coast Guard Cutter (USCGC) MIDGETT (WHEC 726), managed the Imprest Fund aboard ship. When appellant was transferred from USCGC MIDGETT to a new billet in Washington, D.C., $2,598.00 was discovered missing from the Imprest fund. After Department of the Treasury officials began to investigate, appellant confessed to having possession of the missing money and made full restitution to the Coast Guard. Appellant explained that he had mistakenly walked off the ship with the $2,598.00 in cash tucked inside an envelope folded in half in his back pocket. Evidence produced at trial revealed that appellant had falsified records to conceal the missing funds. He was subsequently found guilty of the above-noted offenses.

The *DuBay* hearing officer made numerous findings of fact and conclusions of law on appellant's post-trial claims of command influence and conflict of interest. In particular, we note the following: The staff judge advocate, Captain Norris, had authority to review the performance reports of both defense counsel, Lieutenant Hanes and Lieutenant Sealey. Lieutenant Hanes informed appellant that this rating authority created a potential conflict of interest and explained that he could seek different counsel if he wished. Lieutenant Sealey, however, made no express explanation of this relationship. Appellant subsequently consented to continued representation by both defense counsel. Moreover, neither defense counsel raised this issue at trial. The *DuBay* hearing officer concluded that both defense counsel were not hampered in their ability to zealously represent appellant.

The military judge at the *DuBay* hearing also found that defense counsel met with the staff judge advocate before trial to discuss a pretrial offer for non-judicial punishment under Article 15, UCMJ, 10 USC § 815, in lieu of trial by court-martial. Despite the fact that the staff judge advocate opined that this offer was inadequate and discouraged its submission, defense counsel submitted it to the convening authority.

Finally, the *DuBay* hearing judge found that the staff judge advocate was also present in the courtroom at trial to observe counsels' performance. During a recess in the members' absence, he congratulated trial counsel and briefly spoke to the military judge. He did not speak to defense counsel because they were busy. Sometime later, the staff judge advocate critiqued trial counsel's performance with the suggestion that appellant should have been emphatically described as "a liar."

### I

■ Appellant initially argues on appeal that he was unlawfully denied conflict-free counsel at his court-martial. He notes that both his defense counsel were members of the staff judge advocate's staff and that their performance reports were reviewed by that military officer. He further notes that the staff judge advocate was the chief legal counsel to the convening authority and that his primary interest was in the

successful prosecution of military accused. Accordingly, he concludes that both his defense counsel had a conflict of interest which prevented them from providing him effective legal representation.

■ There is no doubt that an accused in the military justice system is entitled to defense counsel free of conflicts of interest. *See United States v. Davis*, 3 MJ 430 (CMA 1977); *see also Wood v. Georgia*, 450 U.S. 261, 272, 101 S.Ct. 1097, 1104, 67 L.Ed.2d 220 (1981). However, we also note that Congress has expressly prohibited manipulation of these counsel through the fitness report system. Article 37(b), UCMJ, 10 USC § 837(b), added in 1968, states:

> (b) In the preparation of an effectiveness, fitness, or efficiency report, or any other report or document used in whole or in part for the purpose of determining whether a member of the armed forces is qualified to be advanced, in grade, or in determining the assignment or transfer of a member of the armed forces or in determining whether a member of the armed forces should be retained on active duty, *no person subject to this chapter may, in preparing any such report* (1) consider or evaluate the performance of duty of any such member of a court-martial, or (2) *give a less favorable rating or evaluation of any member of the armed forces because of the zeal with which such member, as counsel, represented any accused before a court-martial.*

(Emphasis added.) Accordingly, appellant's institutional-unfairness argument is not well taken as a matter of law. *See United States v. Graf*, 35 MJ 450, 467 (CMA 1992), *cert. granted sub nom. Weiss v. United States*, — U.S. —, 113 S.Ct. 2412, 124 L.Ed.2d 635 (1993); *cf. United States v. Hayes*, 7 USCMA 477, 22 CMR 267 (1957) (decided before 1968 amendment to Article 37(b)); *United States v. Nicholson*, 15 MJ 436, 439 (CMA 1983) (recognizing Army, Air Force, Navy programs for separate defense commands).

This Court addressed a more difficult issue in *United States v. Hubbard*, 20 USCMA 482, 43 CMR 322 (1971). There, a deputy staff judge advocate served as trial counsel at the accused's court-martial. This military officer outranked both defense counsel and also had authority to review and endorse their performance reports. On appeal, his rating authority was challenged as inherently improper because of the potential for defense counsel to be coerced into restraining his advocacy for the accused. After noting that the legal office of "some military organizations may be so small that the staff judge advocate or the deputy staff judge advocate must participate in the trial of cases in which the opposing counsel is a person which the judge advocate or deputy judge advocate must rate," we held that such rating relationships are not *"per se* prejudicial." *Id.* at 484, 43 CMR at 324.

In a more recent case, *United States v. Nicholson*, 15 MJ 436 (1983), this Court again examined conflicts of interest prejudicial to an accused created because a trial counsel had rating authority over defense counsel. In *Nicholson*, the assistant trial counsel was superior in rank to defense counsel and drafted their performance reports. A majority of this Court held that even the appearance of conflict in these circumstances could be avoided if defense counsel explained the situation to the accused and then the accused requested continued representation by defense counsel. *Id.* at 439. *See generally* American Bar Association's Standing Committee on Ethics and Professional Responsibility, Informal Opinion No. 1474 (1982): 15 MJ at 438.

We also note several circumstances which obviate even the appearance of conflict resulting from the staff judge advocate's rating relationship in this case. First, the staff judge advocate was not trial counsel in this case, and he did not act in this capacity at any time during this court-martial. Thus, the narrow trial counsel-staff judge advocate holding of *Nicholson* is not applicable in this case. *Id.* at 439. Second, defense counsel made no motion at trial concerning this reporting relationship, and the *DuBay* hearing expressly found

that they zealously represented appellant. These facts alone justified affirmance in *United States v. Hubbard,* 20 USCMA at 485, 43 CMR at 325. Finally, one defense counsel, Lieutenant Hanes, disclosed this rating relationship to appellant and the second, Lieutenant Sealey, did so impliedly, and appellant nonetheless continued to be represented by these counsel. *See United States v. Nicholson, supra* at 439. Accordingly, as a matter of law, appellant's conflict-of-interest argument must fail.

## II

█ Appellant next argues that the staff judge advocate's pretrial, trial, and post-argument conduct constituted unlawful command influence in violation of Article 37. In this regard, he notes the staff judge advocate's efforts prior to trial to dissuade defense counsel from requesting the convening authority to handle this case at an Article 15 non-judicial punishment proceeding rather than at a court-martial. He also calls our attention to the staff judge advocate's sudden appearance at this court-martial during closing argument to the members. Finally, he cites the staff judge advocate's public praise of trial counsel's closing argument in the presence of the military judge and his efforts in assisting trial counsel by critiquing argument. Reversal, appellant suggests, is warranted under previous decisions of this Court condemning unlawful command influence when exercised by staff judge advocates. *United States v. Kitts,* 23 MJ 105 (CMA 1986); *United States v. Kitchens,* 12 USCMA 589, 31 CMR 175 (1961).

Turning first to appellant's pretrial-interference claim, we are satisfied that no unlawful command influence occurred. The military judge's findings at the post-trial *DuBay* hearing provide a clear picture of what transpired in this case. He found:

35. That in early March 1988, CAPT Norris (the SJA [Staff Judge Advocate]) met in his office with both LT Hanes and LT Sealey to discuss the defense intention to submit a request to the convening authority to take the accused's case to a flag mast.

36. That during this meeting the defense counsel showed CAPT Norris a draft letter to the convening authority requesting a flag mast for the accused. That CAPT Norris considered this meeting to have a dual purpose-firstly, to advise the defense as to possible approaches that might be successful with the convening authority and, secondly, to review the request in order to properly advise the convening authority concerning his legal options.

37. That CAPT Norris was somewhat disappointed with the draft letter from a professional perspective because he did not believe that the approach taken was either creative or persuasive. He also did not believe that the defense strategy of attempting to characterize the situation as an innocent mistake on the accused's part was very convincing. He was not upset by and, in fact, he expected to receive a request of this sort because it would be a legitimate and appropriate defense tactic. He was, however, disappointed, from a professional perspective, with the content of the draft request.

38. That CAPT Norris had previously reviewed the ART 32 [10 USC § 832] investigation and had personally prepared and transmitted the ART 34 [10 USC § 834] Pretrial Advice to the convening authority recommending trial by General Court–Martial.

39. That during this conversation with LT Hanes and LT Sealey, CAPT Norris expressed an opinion that CWO Caritativo was not being truthful if he was protesting his innocence to his defense counsel. That the SJA voiced this opinion in response to what he viewed as the defense's unconvincing proposal that the very serious charges against CWO Caritativo be disposed of at an ART 15, UCMJ, proceeding on the grounds that these offenses had resulted from an innocent mistake rather than a willful larceny.

40. That this opinion was offered by the SJA in an attempt to assist the defense in formulating a strategy that might persuade the convening authority to grant their request.

41. That after discussing this conversation with CAPT Norris about the flag mast request (including their perception that he was upset by it) with the accused, the defense counsel did submit the request to the convening authority.

This essentially didactic conduct, although obviously ill-timed, does not require reversal.. *See United States v. Copening*, 34 MJ 28 (CMA 1992).

■ Turning next to the defense's trial-interference claim, we hold that it was established beyond a reasonable doubt that the staff judge advocate's conduct did not prejudice appellant. *See generally United States v. Thomas*, 22 MJ 388 (CMA 1986), *cert. denied*, 479 U.S. 1085, 107 S.Ct. 1289, 94 L.Ed.2d 146 (1987). The findings of the *DuBay*-hearing judge state:

42. That CAPT Norris and CDR Weule were present to observe several parts of the accused's court-martial. That both CAPT Norris and CDR Weule observed the closing arguments of both counsel. That CAPT Norris made a practice of doing this in order to observe the courtroom advocacy skills of attorneys who were assigned to the Legal Office. That they both sat in the back of the courtroom out of the line-of-sight of both counsel. That, from my experience trying cases in this courtroom, persons sitting in the rear of the courtroom are approximately 45 feet from the members' box and not in the direct line-of-sight of members listening to and looking at a counsel giving closing argument.

43. That neither CAPT Norris nor CDR Weule expressed, through facial expressions or body language, any support or approval for LCDR Weston or the prosecution in general while both they and the members were in the courtroom.

44. That the defense never made a motion to the Military Judge to exclude either CAPT Norris or CDR Weule from the courtroom.

Reversal in such benign circumstances would clearly be inappropriate. *See United States v. Allen*, 33 MJ at 212. *Cf. United States v. Rosser*, 6 MJ 267 (CMA 1979).

Finally, appellant's claim of post-argument command influence by the staff judge advocate lacks adequate factual support in the record. The *DuBay* judge's findings state:

45. That contrary to LT Hanes' testimony and sworn affidavit, CAPT Norris did not "ostentatiously" praise the trial counsel's performance in the presence of the members. CAPT Norris did walk by the trial counsels' table during the recess that followed both counsels' closing arguments. He did say something to the effect of "good job" or "good closing" to LCDR Weston, but the members were not in the courtroom at the time. CAPT Norris did not make a similar comment to the defense counsels because they were otherwise engaged in conversation with the accused and others. After passing by both counsel's tables enroute to the exit from the courtroom adjacent to the judge's bench, CAPT Norris did briefly discuss LT Hanes' closing argument with the Military Judge. He did say, "But I've heard a lot worse" in response to the Military Judge's comment that "It wasn't a great one."

### D. SJA INFLUENCE ON THE TRIAL COUNSEL AND MILITARY JUDGE

46. That the SJA, CAPT Norris, did not plan or direct the trial strategy or tactics of the Trial Counsel, LCDR Weston.

47. That sometime after closing arguments on findings (possibly while the members were deliberating and just as possibly several days after the trial) the trial counsel (LCDR Weston), while in the confines of the legal office spaces, asked CAPT Norris for an evaluation or critique of his (LCDR Weston's) closing argument on findings.

48. That in response to this request for a critique, CAPT Norris may have told LCDR Weston: "You should have said that 'he is liar' about fifty times," or words to that effect. That CAPT Norris definitely emphasized that the closing argument should have been based on the theme that the accused's explanation was untruthful and that LCDR Weston should have repeated this theme many times.

49. That this critique was offered in private in CAPT Norris' office, although the door may have been open, so that LT Hanes could have overheard it from her office across the hall.

This critique was definitely given outside of the presence of the Members and the Military Judge.

50. That, in his official role as trial counsel, LCDR Weston sometimes prepared various draft letters or responses for eventual signature by the SJA or the convening authority and that CAPT Norris expected his trial counsels to do so.

■ We have no illusions that a staff judge advocate as the legal adviser to the convening authority is disinterested in the successful prosecution of those cases referred by the convening authority for trial. *See generally United States v. Hardin*, 7 MJ 399, 403 (CMA 1979). Where a staff judge advocate undertakes to improperly influence a court-martial and effects such a fraud on our system of justice, we will act decisively. *See United States v. Kitts*, 23 MJ 105; *United States v. Thomas*, 22 MJ 388; *see also United States v. Mabe*, 33 MJ 200 (CMA 1991). However, where a staff judge advocate's conduct cannot reasonably be construed as constituting an improper influence or is otherwise ineffectual, no corrective action is normally required. *See United States v. Allen, supra.* Here, the complained-of-conduct by the staff judge advocate occurred outside the presence of the members, so they could not possibly have been influenced by it.

### III

Appellant's third claim is that the staff judge advocate was disqualified from submitting a post-trial recommendation to the convening authority in his case. *See* RCM 1106(b), Discussion, Manual for Courts–Martial, United States, 1984.[3] This disqualification, he asserts, stems from the conduct of the staff judge advocate averred above and the fact that the latter prepared a pretrial advice to the convening authority under Article 34, UCMJ, 10 USC § 834, which was challenged by the defense at trial. He asks for a new post-trial recommendation. *See United States v. Rice*, 33 MJ 451 (CMA 1991).

**3.** Article 6(c), Uniform Code of Military Justice, 10 USC § 806(c), states:

(c) *No person who has acted as member, military judge, trial counsel, assistant trial counsel, defense counsel, assistant defense counsel, or investigating officer in any case may later act as a staff judge advocate or legal officer to any reviewing authority upon the same case.*

RCM 1106, Manual for Courts–Martial, United States, 1984, states in pertinent part:

**Rule 1106. Recommendation of the staff judge advocate or legal officer**

(a) *In general.* Before the convening authority takes action under RCM 1107 on a record of trial by general court-martial or a record of trial by special court-martial which includes a sentence to a bad-conduct discharge, that convening authority's staff judge advocate or legal officer shall, except as provided in subsec-tion (c) of this rule, forward to the convening authority a recommendation under this rule.

(b) *Disqualification.* No person who has acted as member, military judge, trial counsel, assistant trial counsel, defense counsel, associate or assistant defense counsel, or investigating officer in any case may later act as a staff judge advocate or legal officer to any reviewing or convening authority in the same case.

The Discussion to RCM 1106(b) states:

The staff judge advocate or legal officer may also be ineligible when, for example, the staff judge advocate or legal officer: served as the defense counsel in a companion case; testified as to a contested matter (unless the testimony is clearly uncontroverted); has other than an official interest in the same case; or must review that officer's own pretrial action (such as the pretrial advice under Article 34; *see* RCM 406) when the sufficiency or correctness of the earlier action has been placed in issue.

We note that on December 28, 1987, the Investigating Officer submitted his report on the Article 32, UCMJ, 10 USC § 832, hearing to the convening authority. Defense counsel submitted their objections to that report on January 5, 1988. Defense counsel objected to the report primarily on the following grounds: (1) "The Investigating Officer lacked impartiality"; (2) "The investigation lacked thoroughness"; (3) the Investigating Officer "admitted or considered evidence in an improper manner"; and (4) the Investigating Officer "misstated the defense position in the report."

On January 7, 1988, the staff judge advocate submitted his pretrial advice to the convening authority, pursuant to Article 34. As required by Article 34, the staff judge advocate determined in his pretrial advice that: (1) each specification alleged an offense punishable under the Uniform Code of Military Justice; (2) that each specification was "warranted by the evidence"; and (3) that "a court-martial would have jurisdiction" to try appellant. The staff judge advocate also referenced defense counsel's objections to the Investigating Officer's Report in his pretrial advice and generally concluded that they lacked merit.

Defense counsel made a motion at trial to strike the staff judge advocate's Article 34 advice on grounds that it failed to address defense counsel's objections to the Investigating Officer's Article 32 Report "in any meaningful way." Defense counsel stated at trial:

As is briefly stated in that motion we raise the point that the pretrial advice provided in this instance did not address adequately the questions that Article 34 requires. The Article 32 investigation must be reviewed in terms of evidence, thoroughness, impartiality, and the meeting of the due process requirement. *In this instance the pretrial advice just summarily disposed of the objections raised by the defense*, and they did not provide any advice in substance. And, just by function or mere motion of producing—going through the motions of producing a written materials [sic] does

not suffice in—in terms of providing a written pretrial advice. And, [the] only point addressed by the government counsel is that—that the written pretrial advice was provided, that should have been sufficient. And, we contest that issue and *we contend that [the] pretrial advice in this instance is not sufficient and is defective.*

\*      \*      \*

MJ: As I recall Article 34, he doesn't even—he's not even under any obligation to bring them to the attention of the convening authority, is he?

\*      \*      \*

DC: Yeah true—the defense position—the point is, in making that conclusion, there should have been sufficient consideration in order for the pretrial advice to be proper. So—which wasn't done.

MJ: Now you're—by proper consideration, the pretrial advice says that he considered all the objections.

DC: Just by saying that—that it was considered, does not quite address the issue properly. *In other words, just producing a three page document,* you know, that *doesn't tell me that it has been done.* And, it's not on it's face. It wasn't done.

(Emphasis added.) The military judge denied defense counsel's motion and upheld the Article 34 advice.

As a starting point, we note that appellant's petition for clemency under RCM 1105(b)(3) did challenge the staff judge advocate's impartiality in preparing his posttrial recommendation. He specifically stated:

6. The defense also maintains that this Staff Judge Advocate Recommendation is invalid under RCM 1106. The defense placed in dispute his lack of impartiality and the legal insufficiency of his Article 34, UCMJ, Pretrial Advice at the trial. Consequently, the Staff Judge Advocate is not in a position to render a capable review. For the purpose of submitting

this petition, the defense necessarily refers to the Staff Judge Advocate Recommendation. However, our reference should not be interpreted in any way as an act of conceding the validity of the recommendation.

■ However, neither prior to trial, during trial, nor in this document did he particularly challenge the staff judge advocate's impartiality on the basis of his favoring the prosecution, as is now done on appeal. Accordingly, appellant waived his claim for a new recommendation on this particular ground. *See* RCM 1106(f)(6). Moreover, in view of our subsequent consideration of the *DuBay* findings on these prosecution-bias matters, we find no plain error occurred in the staff judge advocate's conducting this review in appellant's case. *Cf. United States v. Rice*, 33 MJ 451. *See generally United States v. Engle*, 1 MJ 387, 389 (CMA 1976) (a staff judge advocate may be disqualified from preparing post-trial review for conduct antithetical to the integrity of military justice system).

■ Turning to the self-review question, we likewise find no disqualification existed under the Discussion of RCM 1106(b). In *United States v. Collins*, 6 MJ 256, 257 (CMA 1979), this Court held that a staff judge advocate is not disqualified from preparing a post-trial review (1979) because he also prepared the pretrial advice, if his pretrial advice was proper in all material respects. We earlier stated in *United States v. Engle, supra* at 389, that "[i]n the usual case, preparation of the pretrial advice does not disqualify a staff judge advocate from participation in the post-trial review." We do not consider RCM 1106(b) to have changed that rule, but rather we are convinced it incorporates these decisions. *See* Drafter's Analysis, Manual, *supra* at A21–73 (Change 3). Furthermore, examination of the staff judge advocate's pretrial advice in appellant's case establishes that this advice was legally sound. Defense counsel's only complaint was that it did not sufficiently discuss earlier defense objections. This claim was neither legally nor factually warranted. *See generally*

*United States v. Matias*, 25 MJ 356, 361, 363 (CMA 1987).

## IV

Appellant's fourth claim focuses on the Judge Advocate General's failure to act on his request to certify his case to this Court for review. *See* Art. 67(a)(2) (1989). He asserts that such inaction violated the Due Process Clause of the Fifth Amendment. In substance, he asserts that the Judge Advocate General has not established adequate procedures to ensure his certification power under Article 67(a)(2) is exercised as "a quasi-judicial act" rather than as "a partisan litigant." *See generally United States v. Monett*, 16 USCMA 179, 180–81, 36 CMR 335, 336–37 (1966). We need not decide this issue today since appellant's case was reviewed by this Court under Article 67(a)(3) (1989). *See United States v. Schoof*, 37 MJ 96, 98–100 (CMA 1993).

The decision of the United States Coast Guard Court of Military Review is affirmed.

Judges COX and GIERKE concur.

CRAWFORD, Judge (concurring in the result):

I disagree with the majority opinion's characterization of the role of the staff judge advocate. That opinion states: "We have no illusions that a staff judge advocate as the legal adviser to the convening authority is disinterested in the successful prosecution of those cases referred by the convening authority for trial. *See generally United States v. Hardin*, 7 MJ 399, 403 (CMA 1979)." 37 MJ at 181. This sentence overstates the interests of the staff judge advocate; in fact, it overstates the function of the prosecutor. As the Commentary to Standard 3–1.1, 1 ABA Standards for Criminal Justice, The Prosecution Function at 3.7 (2d ed. 1986 Supp.) points out: "Although the prosecutor operates within the adversary system, it is fundamental that the prosecutor's obligation is to protect the innocent as well as to convict the guilty, to guard the rights of the ac-

cused as well as to enforce the rights of the public."

Judge Wiss indicates that his "concurrence . . . should not be read in any way as condoning the organizational structure reflected by this case." 37 MJ at 185. I find that comment curious in light of the opportunity to select counsel available to the accused in this case. Any accused in the military justice system has the right to have appointed counsel at no cost regardless of indigence. He or she also has two other choices: a military lawyer who is reasonably available or a civilian counsel at no cost to the Government. *See* Art. 38(b), Uniform Code of Military Justice, 10 USC § 838(b). The Coast Guard has set up procedures to ensure the independence of counsel.[1] These organizations are service specific based upon the geography and service size. The Coast Guard has attempted to ensure independent counsel by allowing accused to request "out of district" defense counsel.[2]

Appellant specifically rejected the option of requesting an out of district counsel and chose Lieutenant Hanes to represent him because of her "moxie." It was only after obtaining an unfavorable result that a complaint was made as to the lack of independence. Now for the first time on appeal, appellant claims that, because he has counsel of his choosing from within the district, counsel could not withstand the pressure placed on her. Under the facts of this case, I am convinced that counsel was not unlawfully influenced by the staff judge advocate.

WISS, Judge (concurring in the result):

This case does not flatter the military justice system. I acknowledge the unique organizational aspects of the U.S. Coast Guard's criminal justice operation that flow from its comparative smallness. Even so, the staff judge advocate's effort to be all things to all people, however well-intentioned, reflects an insensitivity to the likely appearance of conflict—a potential that should be scrupulously avoided in the military justice system.

I am persuaded to concur in the result reached by the majority here only because the military judge's findings of fact at the *DuBay*[1] hearing convince me: 1) that these circumstances did not affect appellant's defense counsel, even subconsciously, in representing their client; 2) that, indeed, if anything, defense counsel were driven to ensure that the institutional conflict not compromise their representation; 3) that appellant was adequately advised of the circumstances and his options, including requesting "an 'out-of-district' defense counsel," yet he rejected such an option and knowingly chose to continue with the counsel he had—at least in part because he was aware of Lieutenant Hanes' prior representation of another warrant officer and believed "she was the only counsel who would 'fight against the system'" and "the only counsel he knew who would 'have enough courage to go against her superiors'";[2] and 4) that, under these circum-

---

1. On January 11, 1973, Secretary of Defense Melvin Laird directed the armed services to revise their procedures to place defense counsel under the authority of the Judge Advocate General; in the case of the Marine Corps, under the Director, Judge Advocate Division. Because the Coast Guard is part of the Department of Transportation, it was not subject to the memorandum. In any event they have permitted defendants to request "out of district" counsel.

2. Art. 3–C–2, Department of Transportation, Coast Guard Military Justice Manual, COMDINST M5810.1C (Oct. 16, 1987).

1. *United States v. DuBay*, 17 USCMA 147, 37 CMR 411 (1967).

2. *See* the following Findings of Fact (quoted verbatim below):

75. That LT Sealey never directly explained his perceived conflict of interest to the accused. He did explain to the accused that he was on the staff of the Convening Authority and the MLC Pacific Legal Officer. He correctly assumed that the accused was aware that CAPT Norris, the MLC Pacific Legal Officer, was also the SJA in this case. He did not specifically explain to the accused that CAPT Norris was in his OER rating chain. He did explain to the accused his rights to counsel, including the right to an "out-of-district" defense counsel, that then existed under the Military Justice Manual.

76. That some time before trial LT Hanes explained her OER rating chain to the accused.

stances, the failure of defense counsel to bring this potential conflict to the attention of the military judge so that the matter could be discussed and resolved with appellant on the record, *see United States v. Davis*, 3 MJ 430, 433 (CMA 1977), was offset, belatedly, by the thorough inquiry of the military judge at the *DuBay* hearing.

This concurrence, however, should not be read in any way as condoning the organizational structure reflected by this case or the activities of the staff judge advocate in performing within that structure. In addressing the organizational plan for defender and assigned-counsel programs, Standard 5–1.3, 1 ABA Standards for Criminal Justice, Providing Defense Services at 5.13 (2d ed. 1986 Supp.) states: "The legal representation plan for a jurisdiction should be designed to guarantee the integrity of the relationship between lawyer and client. The plan and the lawyers serving under it should be free from [outside] influence...." The History of Standard 5–1.3 indicates that the various protections that it prescribes in order to assure independent, conflict-free defense counsel "should help alleviate suspicion on the part of defendants that appointed counsel ... are not fully committed to their clients." *Id.* at 5.14. The subsequent Commentary adds:

That during this explanation she informed the accused that she felt some discomfort because the SJA was in the rating chain. That LT Hanes also explained to the accused his right to request another counsel or to hire a civilian counsel. That the accused acknowledged his understanding of these explanations to LT Hanes. That, despite this situation, the accused chose to be represented by LT Hanes as Individual Military Counsel.

\* \* \*

81. That sometime in February 1988 LT Hanes informed the accused that she was filing a discrimination complaint against some individuals who were involved in processing his case. She further informed him that there could be repercussions from this discrimination complaint that could affect her defense of him or that could result in adverse consequences to him. She advised him that he should consider being represented by another counsel.

[I]t is essential that both full-time defenders and assigned counsel be fully independent, free to act in behalf of their clients as dictated by their best professional judgment. A system that does not guarantee the integrity of the professional relation is fundamentally deficient in that it fails to provide counsel who have the same freedom of action as the lawyer whom the person with sufficient means can afford to retain. Where counsel is not fully independent to act in the client's behalf, the deficiency is often perceived by the defendant, which encourages cynicism toward the justness of the legal system.

*Id.* at 5.15.

The actions here of the staff judge advocate were at odds with the goals of the Standard. For instance, he purported to act as mentor to defense counsel—in effect, advising on defense strategy—relating to the preparation of the defense request to the convening authority to dispose of the charges by a flag mast. *Cf. United States v. Copening*, 34 MJ 28, 29 n.\* ("[W]e strongly recommend that military judges not conduct 'Bridging the Gap' discussions when there is any possibility of future action in a case."). At the same time, however, he was acting in fact and in

82. That both defense counsels jointly and individually discussed with the accused the possibility of finding a more "independent" counsel for him. That the possibility of requesting another Individual Military Counsel was explored and rejected. That the possibility of hiring a civilian attorney was explored and rejected.
83. That, despite his knowledge of the potential impacts of LT Hanes actions on his defense and these explanations by both counsel, the accused chose to continue to be represented by LT Hanes as Individual Military Counsel.
84. That the accused believes that LT Hanes did a good job for him. That the accused continued to seek legal advice from LT Hanes long after final action on this case was taken by the convening authority and an appellate defense counsel had been assigned. That LT Hanes provided advice to the accused about which counsel to accept for this *Dubay* hearing.

law as the legal adviser to the convening authority relating to the decision on that request, as well as relating to all other aspects of this case. *Cf. United States v. Kitts*, 23 MJ 105, 108 (CMA 1986) ("A staff judge advocate generally acts with the mantle of command authority. *United States v. McClain*, 22 MJ 124 (CMA 1986).").

Indeed, the military judge at the *DuBay* hearing found as fact that the convening authority had "directed the defense counsel to route all ... requests or motions relating to this case through his SJA ... so that [he] could provide legal advice for him to consider before taking whatever action was required." Even so, the staff judge advocate felt free to critique the defense request in a meeting with defense counsel and to offer a variety of opinions both on the strategy and on the quality of the supporting argument made by counsel—all "in an attempt to assist the defense in formulating a strategy that might persuade the convening authority to grant their request." The staff judge advocate himself recognized the duality of his function in this regard, *see* Specific Finding of Fact 36, 37 MJ at 179, yet appears to have ignored the potential for conflict which it entailed.

Also, as the rating superior of both defense counsel (and trial counsel), he was present in the courtroom during several parts of the court-martial to observe counsel's performance—again, while, at the same time, wearing the "mantle of command authority" and serving as the convening authority's legal advisor. *Cf. United States v. Kitts, supra.* This personal-presence supervision surely does little to foster elimination of the appearance of conflict and command influence. *Cf. United States v. Rosser*, 6 MJ 267 (CMA 1979) ("continued monitoring of appellant's court-martial proceedings" by appellant's commander—who also commanded several witnesses for both the defense and the Government and who himself was a witness, as well as appellant's accuser—was "patent meddling in the proceedings of this court-martial," *id.* at 272, and points up "the concern of Congress and this Court in eliminating even the appearance of unlawful command influence at courts-martial," *id.* at 271).

With these expressions of concern, however, I concur in affirming the decision below for the reasons that I set out earlier in this opinion. It is my fervent hope that this Court will not be made aware of any continuing structural or performance conflicts like those that occurred here—the next time a *DuBay* proceeding may not be able to sanitize the appearance of taint.