# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32534**

————————————

**UNITED STATES**
*Appellee*

v.

**Kevin S. CHANDLER**
Airman Basic (E-1), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 13 January 2020

————————————

*Military Judge:* Brian D. Teter.

*Approved sentence:* Bad-conduct discharge, confinement for 5 months, and forfeiture of $1,000.00 pay per month for 5 months. Sentence adjudged 22 March 2018 by SpCM convened at Tinker Air Force Base, Oklahoma.

*For Appellant:* Major Mark C. Bruegger, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges.*

Senior Judge J. JOHNSON delivered the opinion of the court, in which Judge POSCH joined. Judge KEY filed a separate opinion concurring in part and dissenting in part and in the result.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

J. JOHNSON, Senior Judge:

A special court-martial composed of a military judge alone convicted Appellant, in accordance with his pleas pursuant to a pretrial agreement (PTA), of

two specifications of wrongfully using marijuana, two specifications of wrongfully using cocaine, one specification of wrongfully distributing marijuana, and one specification of wrongfully distributing cocaine, all in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[1] The military judge sentenced Appellant to a bad-conduct discharge, confinement for five months, and forfeiture of $1,000.00 pay per month for five months. The convening authority approved the adjudged sentence.

Appellant raises four issues on appeal: (1) whether the staff judge advocate's (SJA's) personal involvement in negotiating the content of the stipulation of fact disqualified him from providing post-trial advice to the convening authority; (2) whether the military judge abused his discretion by admitting a deferred plea agreement as evidence of a prior conviction; (3) whether the Government impermissibly failed to disclose information favorable to the Defense; and (4) whether trial counsel abused her discretion by failing to recognize Appellant's substantial assistance to law enforcement.[2] We have carefully considered issues (3) and (4) and find they warrant neither relief nor further discussion. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987). As to issues (1) and (2), we find no prejudicial error and we affirm the findings and sentence.

## I. BACKGROUND

Appellant enlisted in the Air Force on 3 November 2015. He arrived at his first permanent duty station at Andersen Air Force Base (AFB), Guam, on 9 April 2016. In November 2016 Appellant relocated to Tinker AFB, Oklahoma, for medical reasons.

While stationed at Tinker AFB, Appellant used controlled substances extensively, and his illegal drug use was eventually discovered by the Air Force Office of Special Investigations (AFOSI). AFOSI agents interviewed Appellant on 13 October 2017. Appellant admitted to the AFOSI that between 8 November 2016 and 13 October 2017 he knowingly and wrongfully used cocaine approximately 150 times and smoked marijuana approximately 40 times. Urine samples Appellant provided on 13 and 17 October 2017 tested positive for both cocaine and marijuana metabolites. In addition, between 8 November 2016 and 13 October 2017, on separate occasions Appellant distributed marijuana to two civilian acquaintances in exchange for money. During the same time frame

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] Appellant personally asserts issues (3) and (4) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

Appellant also twice distributed cocaine to another Airman who was an AFOSI informant—once by mail without payment, and once in person in exchange for money.

After Appellant disclosed his drug abuse to the AFOSI, he began to attend counseling for his substance abuse. However, at a counseling appointment on 13 February 2018, Appellant reported that he had relapsed. He consented to provide a urine sample, which again tested positive for the presence of both cocaine and marijuana metabolites.

## II. DISCUSSION

### A. SJA Disqualification

#### 1. Additional Background

Before trial, negotiations took place regarding a potential PTA. The prospective PTA required Appellant to, *inter alia*, "[e]nter into a reasonable stipulation of fact with the government." Initial discussions regarding a potential stipulation of fact were conducted by the trial counsel and the Appellant's trial defense counsel, Captain (Capt) CC.[3] However, on 12 or 13 March 2018, the SJA, Lieutenant Colonel (Lt Col) AM, spoke with Capt CC by telephone about the stipulation of fact. Specifically, Lt Col AM expressed that the stipulation of fact should include Appellant's admission to the AFOSI that he used cocaine approximately 150 times. Capt CC was reluctant to agree because stipulating to 150 uses was unnecessary in order for Appellant to providently plead to wrongfully using cocaine "on divers occasions," and because he did not believe the Government could corroborate more than two or three uses of cocaine during the charged time frame. Other than this single telephone call, Lt Col AM did not directly participate in negotiating the stipulation of fact.

On 13 March 2018, Appellant and Capt CC signed a PTA offer in which Appellant did agree to, *inter alia*, enter a reasonable stipulation of fact. In return, the convening authority agreed not to approve any sentence to confinement in excess of six months. On 15 March 2018, Lt Col AM signed the offer and recommended acceptance. On 16 March 2018, the convening authority accepted and approved the PTA.

At trial, the Government introduced a stipulation of fact dated 13 March 2018 and signed by trial counsel, assistant trial counsel, Capt CC, and Appellant. With regard to divers use of marijuana and cocaine, the stipulation stated, *inter alia*:

---

[3] Maj CC was a captain at the time of Appellant's trial.

[B]etween on or about 8 November 2016 and on or about 17 October 2017, [Appellant] used marijuana approximately 40 times by smoking it. The Air Force may not have evidence to corroborate all of the 40 uses individually, but [Appellant] wants to admit what he did and take accountability for those uses. . . .

. . . .

. . . [B]etween on or about 8 November 2016 and on or about 17 October 2017, [Appellant] used cocaine on approximately 150 different occasions. Although the government may not be able to corroborate all 150 specific uses [Appellant] admitted to AFOSI, [Appellant] agreed to admit to this fact because he believes it is the right thing to do. . . .

In her sentencing argument, assistant trial counsel repeatedly referred to the stipulated number of times Appellant used marijuana and cocaine.

After Appellant's trial, on 8 June 2018, Lt Col AM signed a staff judge advocate recommendation (SJAR) for the convening authority. In the SJAR, Lt Col AM opined that the adjudged sentence was appropriate and recommended the convening authority approve it. Copies of the SJAR were served on Appellant and Capt CC on 8 June 2018.

The Defense submitted Appellant's clemency matters on 21 June 2018. These included, *inter alia*, a memorandum signed by Capt CC which alleged multiple legal errors related to Appellant's trial. Among other errors, Capt CC asserted Lt Col AM had "disqualified himself from . . . advising the convening authority on clemency through the staff judge advocate review [sic] (SJAR)." Capt CC explained, "[d]uring the negotiation of the stipulation of fact, the SJA personally called defense counsel to discuss specific terms and to argue for the inclusion of certain aggravating factors." He continued:

> The negotiation of a stipulation of fact belongs to the role of the prosecutor, not of the detached individual that will advise the convening authority on post-trial issues. Due to the fact that the SJA elected to take on the role of prosecutor in this case, he should have been disqualified under Article 6(c), UCMJ, and [Rule for Courts-Martial] 1106(b) from participating in post-trial review. Defense counsel alerted the legal office of this concern through the Chief of Military Justice to allow the prosecution to find another person to write the SJAR, but the SJA elected to write the SJAR anyway. The SJA's willingness to call defense counsel to negotiate specific provisions of the pretrial agreement goes beyond the appropriate involvement of an SJA advising the convening authority.

For this alleged error and other reasons, Capt CC requested that the convening authority release Appellant from confinement immediately and reduce his term of adjudged forfeitures to match his term of confinement.

On 2 July 2018, Lt Col AM signed an addendum to the SJAR in which, *inter alia*, he repeated his recommendation that the convening authority approve the findings and adjudged sentence. Lt Col AM advised the convening authority that Capt CC's complaint regarding Lt Col AM's involvement in negotiating the stipulation of fact was "without merit." Lt Col AM explained that Rule for Courts-Martial (R.C.M.) 705(d)(1) expressly permitted an SJA to initiate PTA negotiations, and the stipulation of fact that Capt CC referred to was part of the Defense's PTA offer. Lt Col AM concluded that apart from that single conversation he had no active part in preparing the case, and he had only an official interest in the case as the convening authority's legal advisor. On 6 July 2018, the convening authority approved the adjudged sentence.

**2. Law**

"Whether a staff judge advocate . . . is disqualified from participating in the post-trial review is a question of law that we review de novo. . . . [T]he defense 'has the initial burden of making a prima facie case' for disqualification." *United States v. Taylor*, 60 M.J. 190, 194 (C.A.A.F. 2004) (quoting *United States v. Wansley*, 46 M.J. 335, 337 (C.A.A.F. 1997)).

"Before acting under [10 U.S.C. § 860] on . . . any special court-martial that includes a bad-conduct discharge, the convening authority . . . shall obtain and consider the written recommendation of his staff judge advocate or legal officer." 10 U.S.C. § 860(e);[4] *see also* R.C.M. 1106 (requiring SJA to prepare written SJAR for convening authority prior to action on, *inter alia*, a special court-martial that includes a sentence to a bad-conduct discharge); R.C.M. 1107(b)(3) (requiring convening authority to consider the SJAR, if any, before taking action on a court-martial).

Article 6(c), UCMJ, 10 U.S.C. § 806(c), provides, "No person who has acted as member, military judge, trial counsel, assistant trial counsel, defense counsel, assistant defense counsel, or investigating officer in any case may later act as a staff judge advocate or legal officer to any reviewing authority upon the same case." *See also* R.C.M. 1106(b) (disqualifying members, military judge,

---

[4] This requirement for a written SJAR has been removed from the version of Article 60, UCMJ, 10 U.S.C. § 860, in the *Manual for Court-Martial, United States* (2019 ed.) (2019 *MCM*); however, the 2019 *MCM* version of R.C.M. 1109(d)(2) retains a requirement that the convening authority "consult with the staff judge advocate or legal advisor" in determining whether to take action on the results of a court-martial under R.C.M. 1109.

trial counsel, assistant trial counsel, defense counsel, assistant defense counsel, and preliminary hearing officer from acting as SJA or legal officer in the same case). A person need not be detailed as trial counsel in order to "act" as trial counsel for purposes of Article 6(c), UCMJ. *United States v. Stefan*, 69 M.J. 256, 258 (C.A.A.F. 2010). Additionally, "[t]he staff judge advocate or legal officer may also be ineligible when, for example, [he or she] . . . has other than an official interest in the same case; or must review [his or her] own pretrial action . . . when the sufficiency or correctness of the earlier action has been placed in issue." R.C.M. 1106(b), Discussion.

An SJA who advises a convening authority on action on the result of a court-martial needs to "be, and appear to be, objective." *United States v. Dresen*, 47 M.J. 122, 124 (C.A.A.F. 1997) (citations omitted). Our superior court has "broadly applied" Article 6(c), UCMJ, "in light of its well-established purpose 'to assure the accused a thoroughly fair and impartial review.'" *United States v. Lynch*, 39 M.J. 223, 227–28 (C.M.A. 1994)) (quoting *United States v. Crunk*, 15 C.M.R. 290, 293 (C.M.A. 1954)). Conduct by an SJA other than performing one of the disqualifying roles specified in Article 6(c), UCMJ, and R.C.M. 1106(b) "'may be so antithetical to the integrity of the military justice system as to disqualify him from participation' in the post-trial review." *Id.* at 228 (quoting *United States v. Engle*, 1 M.J. 387, 389 (C.M.A. 1976)) (additional citation omitted). For example, an SJA "must disqualify himself from participating in the post-trial recommendation" when "a legitimate factual controversy exists between the [SJA] and the defense counsel." *Id.* (citing *United States v. Caritativo*, 37 M.J. 175, 183 (C.M.A. 1993)).

R.C.M. 705(d)(1) provides, *inter alia*, that "[p]retrial agreement negotiations may be initiated by the accused, defense counsel, trial counsel, the staff judge advocate, convening authority, or their duly authorized representatives."

An SJAR provided by a disqualified SJA is not void; an appellant is entitled to relief due to such an error only if the appellant makes a colorable showing of possible prejudice. *See Stefan*, 69 M.J. at 259; *United States v. Edwards*, 45 M.J. 114, 115 (C.A.A.F. 1996).

### 3. Analysis

By design, an SJA performs multiple roles within the military justice system. Many years ago, our superior court explained:

> Whatever one may think of the wisdom of multiple investiture, military law constitutes the staff legal officer the advisor to the convening authority in regard to his court-martial functions, and the advisor to others involved in a court-martial in regard to their respective rights and obligations. Thus, [for example,] the staff legal officer can supply general advice to trial counsel as to

> the proof required to establish the charges against an accused, without having such advice transform him into a prosecutor so as to make him ineligible thereafter to advise the convening authority . . . .

*United States v. Willis*, 46 C.M.R. 112, 114 (C.M.A. 1973). This case requires us to consider whether Lt Col AM crossed the line that separates the role of an SJA from the role of a trial counsel, such that he was disqualified from serving as the SJA for purposes of post-trial advice to the convening authority under Article 6(c), UCMJ, and R.C.M. 1106(b). Appellant contends Lt Col AM's participation in negotiating the content of the stipulation of fact crossed that line. However, for the following reasons, Appellant has failed to persuade us.

First, we note the narrow factual basis for the asserted disqualification. Appellant relies on a single telephone conversation between Lt Col AM and Capt CC as the disqualifying event. Moreover, Appellant further focuses on a single point of contention addressed during the call, whether the stipulation of fact would include a reference to the number of times Appellant admitted to the AFOSI that he used controlled substances during the charged time frame. Appellant has not asserted, and the record does not disclose, that Lt Col AM "acted" as trial counsel in any other respect.

Second, we find there was no material factual controversy in dispute between Lt Col AM and Capt CC that would have required the convening authority to obtain advice from an uninvolved judge advocate. *See Lynch*, 39 M.J. at 228. In addressing the asserted disqualification in the addendum to the SJAR, Lt Col AM did not dispute that the conversation in question "centered on" whether certain information would be included in the stipulation of fact. Instead, the controversy involved the significance of the undisputed fact that Lt Col AM directly discussed the content of the stipulation with Capt CC, resulting in the inclusion of the number of times Appellant used cocaine and marijuana during the charged time frame, as he admitted to the AFOSI. Whether Lt Col AM's position is characterized as "insistence" or as "explaining options" is not the material point. Capt CC's post-trial objection to Lt Col AM's involvement was a question of law, not a factual dispute. SJAs routinely advise convening authorities with respect to allegations of legal error raised during clemency; in fact, they are required to do so. *See* R.C.M. 1106(d)(4).

Third, there is no indication Lt Col AM had anything other than an official interest in the case. *See* R.C.M. 1106(b), Discussion. Appellant does not allege any unlawfulness or legal deficiency with either the stipulation of fact or the PTA itself. Furthermore, we do not consider Lt Col AM's evaluation of the asserted issue of his own disqualification to be itself disqualifying. We find this situation akin to a military judge's ruling on a motion that the military judge

should recuse himself—in such situations, the motion is not per se disqualifying; rather, the military judge has discretion to decide the matter, subject to appellate review. *See United States v. Butcher*, 56 M.J. 87, 90–91 (C.A.A.F. 2001).

Fourth, the context of the conversation in question is highly significant. Specifically, this conversation regarding the stipulation of fact was closely-related, in substance and in time, to the negotiation of the PTA—a negotiation an SJA is expressly authorized to participate in. *See* R.C.M. 705(d)(1). We recognize the PTA and stipulation are distinct agreements, and that the SJA is a signatory to the former and not to the latter. Nevertheless, the content of the stipulation was directly related to the terms of the PTA, which committed Appellant to enter a "reasonable" stipulation of fact. Where a reasonable stipulation of fact is an explicit term of a PTA between the accused and the convening authority, the content of that stipulation directly concerned the SJA in his role as legal advisor to the convening authority. Moreover, the record indicates the conversation between Lt Col AM and Capt CC occurred either on the same day the PTA was signed or the day prior, further confirming the content of the stipulation had immediate significance to the creation of the PTA.

Fifth, we do not find Lt Col AM's limited pretrial involvement with the stipulation of fact comparable to those cases where our superior court has found that SJAs or legal officers engaged in disqualifying conduct, either as trial counsel or otherwise. *See, e.g.*, *Stefan*, 69 M.J. at 257–58 (acting SJA signed both charge sheets as the "trial counsel" who caused the referred charges to be served on the appellant in accordance with R.C.M. 602); *United States v. Gutierrez*, 57 M.J. 148, 149 (C.A.A.F. 2002) (chief of military justice whose pretrial testimony on speedy trial motion was contradicted by subsequent stipulation of fact prepared SJAR and addendum as SJA); *United States v. Johnson-Saunders*, 48 M.J. 74, 74–75 (C.A.A.F. 1998) (per curiam) (assistant trial counsel who delivered sentencing argument drafted and signed SJAR); *Lynch*, 39 M.J. at 228 (material factual dispute between SJA and defense counsel regarding appellant's purported pretrial waiver of conflict-free counsel); *Edwards*, 45 M.J. at 115–16 (legal officer who prepared post-trial advice actively participated in investigation and signed charge sheet as accuser); *United States v. Rice*, 33 M.J. 451, 452–53 (C.M.A. 1991) (legal officer who signed legal advice for convening authority had testified against appellant as sentencing witness for Government); *Engle*, 1 M.J. at 389–90 (appellant's post-trial challenges to SJA's pretrial decisions required SJA to review the factual sufficiency and legal soundness of his own previous legal opinions). Neither Appellant nor our dissenting colleague has cited any decision by our superior court, this court, or our sister courts in which an SJA's participation in the creation of a stipulation of fact required by a PTA resulted in the SJA's disqualification, and we are aware of none.

For the foregoing reasons, we conclude Appellant has not met his burden to show Lt Col AM was disqualified from advising the convening authority. However, we do not indorse Lt Col AM's direct participation in negotiating the content of the stipulation of fact. It is not clear from the record why Lt Col AM felt the need to do so, as opposed to participating by communicating with trial counsel; but in doing so he created a risk the conversation might have blossomed into a material factual dispute or legal controversy with the Defense that would have been disqualifying.

Finally, assuming *arguendo* Lt Col AM was disqualified, Appellant has failed to demonstrate a colorable showing of possible prejudice. *See Stefan*, 69 M.J. at 259. We are not persuaded that Lt Col AM had an inappropriate interest in Appellant's case that motivated him to oppose the Defense's clemency request. We find nothing untoward in Lt Col AM's position, in his role as legal advisor to the convening authority, that an accused who admitted to wrongfully using cocaine and marijuana approximately 150 and 40 times, respectively, be sentenced on the basis of those criminal acts. Significantly, the corroboration requirement in Mil. R. Evid. 304(c) explicitly applies during findings, not during presentencing proceedings. Thus, even if Appellant's admission was not included in the stipulation, presumably the Government could have introduced it through the AFOSI agents who received that admission. *See generally* R.C.M. 1001(b)(4) (authorizing trial counsel to present in presentencing proceedings "evidence as to any aggravating circumstances directly relating to or resulting from the offenses of which the accused has been found guilty"). This reality suggests why the Defense ultimately agreed to include these admissions, and to have Appellant take credit for them in the stipulation. Therefore, we are not persuaded Lt Col AM's involvement dramatically altered the sentencing landscape presented to the military judge to Appellant's detriment.

Similarly, we find no basis to conclude another SJA would have viewed differently the significance of Appellant's admission that he used cocaine approximately 150 times and marijuana approximately 40 times. To omit this profound evidence of the extent of Appellant's crimes would have been beyond magnanimous. By ensuring the military judge was informed of the scope of the offenses Appellant had admitted to, and for which he was convicted and was to be sentenced, the SJA was competently performing his duty to promote justice. Because we perceive nothing unusual about Lt Col AM's position regarding the evidence, we perceive no colorable showing that another SJA would have provided different advice to the convening authority.

Furthermore, the other legal errors Capt CC asserted during clemency were essentially the same two errors Appellant has personally asserted on appeal, which we have found to be without merit. Unlike our dissenting colleague,

we perceive no basis to believe another SJA would have viewed them any more favorably to Appellant.

In summary, viewing the circumstances as a whole, we find "nothing that would suggest that another SJA would have made a different recommendation on Appellant's clemency request." *Stefan*, 69 M.J. at 259.

## B. Deferred Plea Agreement as Prior Conviction

### 1. Additional Background

During sentencing proceedings, trial counsel sought to introduce Prosecution Exhibit 13, consisting of a "Deferred Plea Agreement" and an "Order After Hearing" from the Superior Court of Guam. Under the terms of the agreement, which was accepted by the Superior Court judge on 26 June 2017, Appellant agreed to enter a deferred plea of guilty to assault,[5] which involved "verbally admit[ting] the factual circumstances underlying the offense at the time of the plea." Appellant and the Attorney General further agreed, *inter alia*, to the following additional terms: the court would defer acceptance and entry of Appellant's plea for two years; Appellant would receive a suspended sentence to incarceration for one year; Appellant would pay a fine of $1,000.00 plus court costs; Appellant would pay restitution to the victim in an amount to be determined by the court; Appellant would be placed on supervised probation for two years; and the court would dismiss and expunge the case after two years if it found Appellant had faithfully complied with the terms of his probation.

The attached order, signed by the judge on 20 October 2017, indicated that on 15 June 2017 Appellant appeared before the court and changed his plea from "Not Guilty" to "Guilty." The judge found Appellant's guilty plea was made "knowingly and voluntarily," and was "supported by a sufficient factual basis containing each of the essential elements of the offense and that [Appellant] understands and admits the facts necessary to prove the offense." In accordance with the agreement, the court deferred acceptance of the guilty plea and would "dismiss the case and expunge [Appellant's] record" if he completed the terms of the agreement.

Trial defense counsel objected to Prosecution Exhibit 13 on the grounds that it did not qualify as a "conviction" for purposes of R.C.M. 1001(b)(3)(A) because there was no finding of guilt. Trial counsel maintained the exhibit did qualify as a conviction because Appellant had pleaded guilty. The military judge overruled the objection. He explained, "I do not find this to be a diversion without a finding or admission of guilt. I find this document does have a finding -- an admission of guilt. I do not find it has been expunged . . . ."

---

[5] *See* 9 GUAM CODE ANN. § 19.30 (2019).

**2. Law**

We review a military judge's decision to admit sentencing evidence for an abuse of discretion. *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F. 2009) (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

R.C.M. 1001(b)(3)(A) provides, in pertinent part:

> The trial counsel may introduce evidence of military or civilian convictions of the accused. . . . In a civilian case, a "conviction" includes any disposition following an initial judicial determination or assumption of guilt, such as when guilt has been established by guilty plea, trial, or plea of nolo contendere, regardless of the subsequent disposition, sentencing procedure, or final judgment. However, a "civilian conviction" does not include a diversion from the judicial process without a finding or admission of guilt; expunged convictions; juvenile adjudications; minor traffic violations; foreign convictions; tribal court convictions; or convictions reversed, vacated, invalidated or pardoned because of errors of law or because of subsequently discovered evidence exonerating the accused.

"[C]onvictions may be admissible regardless of whether a court ultimately suspended judgment upon discharge of the accused following probation [or] permitted withdrawal of the guilty plea . . . . Additionally, the term 'conviction' need not be taken to mean a final judgment of conviction and sentence." R.C.M. 1001(b)(3)(A), Discussion; *see generally Manual for Courts-Martial, United States* (2016 ed.), App. 21, at A21–71–72 (describing the evolution of R.C.M. 1001(b)(3) in order to avoid dependence on state law and "give the sentencing authority as much information as the military judge determines is relevant in order to craft an appropriate sentence for the accused").

**3. Analysis**

On appeal, Appellant renews trial defense counsel's objection that the deferred plea agreement was not a prior conviction under R.C.M. 1001(b)(3)(A). He contends the deferred guilty plea was "essentially a diversion from the judicial process with neither a finding nor court-accepted assumption of guilt." In addition, he refers to the Guamanian statute that defines "previous conviction," for purposes of Guamanian law, to mean "[a]n adjudication by a court of

competent jurisdiction that the defendant committed a crime . . . ." 9 GUAM CODE ANN. § 80.44 (2019). Because the military judge "clearly erred," Appellant requests his sentence be set aside.

We find no abuse of discretion. The admissibility in a court-martial of the record a prior civilian conviction is governed by R.C.M. 1001(b)(3)(A) rather than the law of the civilian jurisdiction. Under that rule, a civilian conviction includes "*any disposition* following an initial judicial determination or *assumption of guilt* . . . regardless of the subsequent disposition, sentencing procedure, or final judgment." R.C.M. 1001(b)(3)(A) (emphasis added). By that definition, the military judge's ruling to admit Prosecution Exhibit 13 was eminently reasonable. It is clear from the exhibit that Appellant appeared in the Superior Court of Guam and entered a plea of guilty, which the judge found to be knowing, voluntary, and supported by a sufficient factual basis which Appellant admitted. This was evidently an initial "assumption of guilt," and therefore admissible as a civilian conviction regardless of the court's deferment of the acceptance of the plea pending Appellant's completion of his supervised probation and other terms of the agreement.

## III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred.[6] Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

KEY, Judge (concurring in part and dissenting in part):

I agree with my colleagues in the majority on the resolution of Appellant's second, third, and fourth assigned errors, however, I respectfully dissent with regard to the majority's conclusion that the staff judge advocate was not disqualified from providing post-trial advice to the convening authority.

In this case, the staff judge advocate, who authored both the staff judge advocate's recommendation (SJAR) and the addendum to the SJAR, directly participated in the negotiation of specific terms of a stipulation of fact. The

---

[6] We note one error not raised by Appellant. The SJAR erroneously indicates the maximum imposable punishment included, *inter alia*, forfeiture of two-thirds of Appellant's pay per month for 12 months *and* a fine. *See* Rules for Courts-Martial 201(f)(2)(B)(i), 1003(b)(3); *United States v. Books*, No. ACM S32369, 2017 CCA LEXIS 226 at *7 (A.F. Ct. Crim. App. 31 Mar. 2017). However, Appellant has not asserted and we do not find any colorable showing of possible prejudice from the error under the facts of this case. *See United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000).

staff judge advocate, Lieutenant Colonel (Lt Col) AM sought, and ultimately secured, Appellant's confessional stipulation to 150 uses of cocaine and 40 uses of marijuana, a dramatic departure from the "more than once" term Appellant's trial defense counsel sought for each drug. He did so by directly telephoning Appellant's trial defense counsel, Captain (Capt) CC, who described Lt Col AM as both leading the discussions for the Government on the call and insisting the stipulation include the elevated number of uses. When Capt CC argued the Government lacked corroboration to prove more than two or three cocaine uses, Lt Col AM told Capt CC the "more than once" language was "insufficient and that the [stipulation] must reference the 150 uses of cocaine and 40 uses of marijuana without qualification." Capt CC later said he was surprised to be called by Lt Col AM, explaining that "Lt Col [AM] was the only [staff judge advocate] who ever personally discussed with me what details to include in a stipulation of fact."

Lt Col AM admitted he inserted himself in the ongoing negotiations between trial counsel and trial defense counsel "due to the inability of counsel to agree to terms of the [stipulation]." He described his efforts as motivated by his desire "to ensure there was a reasonable [pretrial agreement (PTA)] for the convening authority to agree to, and that the PTA captured appropriately the nature of the misconduct." Even though Lt Col AM claimed he "did not necessarily care whether there was a PTA or a litigated trial," he justified his personal entry into the negotiations "to avoid any potential delays/costs to the government/negative mission impact." Lt Col AM has taken issue with trial defense counsel's claim that he insisted the larger number of drug uses be included in the stipulation, saying, "It is also asserted that I 'insisted' that certain terms be included in the [stipulation]. This is a mischaracterization. As stated, I highlighted options."

After Lt Col AM's phone call to the Defense, Capt CC discussed Lt Col AM's position with Appellant who then agreed to stipulate to the number of uses sought by Lt Col AM.

Three months after being sentenced, Appellant submitted a request for clemency which included a memorandum from Capt CC who argued Lt Col AM was disqualified from preparing the SJAR by virtue of his negotiating specific terms of the stipulation of fact. Lt Col AM responded to this argument in his addendum to the SJAR, describing Capt CC's position as being "without merit." Lt Col AM argued his power to negotiate the terms of the stipulation derived from his authority to initiate negotiations on a pretrial agreement under

R.C.M. 705(d)(1).[1] He asserted he had not actively participated in the preparation of Appellant's case, "[a]side from that one telephonic conversation," and that he had "only an official interest in the case."

Article 6(c), Uniform Code of Code of Military Justice (UCMJ), 10 U.S.C. § 806(c), prohibits any person "who has acted as . . . trial counsel [or] assistant trial counsel" from later acting "as a staff judge advocate or legal officer to any reviewing authority upon the same case." This provision was enacted "to assure the accused a thoroughly fair and impartial review." *United States v. Lynch*, 39 M.J. 223, 228 (C.M.A. 1994) (internal quotation marks omitted); *United States v. Coulter*, 14 C.M.R. 75, 77 (C.M.A. 1954). The foundational right to have the commander taking action on a case be "free from any connection with the controversy" has been recognized since the earliest days of modern court-martial practice. *See United States v. Gordon*, 2 C.M.R. 161, 168 (1952). This requirement extends to legal professionals providing guidance on such action. They "must occupy a similarly uncolored vantage point from which to assess the pertinent facts and circumstances." *United States v. Mallicote*, 32 C.M.R. 374, 376–77 (C.M.A. 1962).[2]

Staff judge advocates have long been admonished to avoid becoming so personally involved in the outcome of a court-martial that they become barred from participating in later stages. *See e.g.*, *United States v. Gunnels*, 23 C.M.R. 354, 358 (C.M.A. 1957). A staff judge advocate may be disqualified if he or she "has other than an official interest in a case" or when the staff judge advocate "must review [his or her] own pretrial action . . . when the sufficiency or correctness of the earlier action has been placed in issue." R.C.M. 1106(b) Discussion. The language "other than an official interest" means having "a personal interest or feeling in the outcome of a particular case." *United States v. Sorrell*, 47 M.J. 432, 433 (C.A.A.F. 1998).

Although providing pretrial advice to a convening authority will not disqualify a staff judge advocate from preparing the SJAR, "where a legitimate factual controversy exists between the staff judge advocate and the defense counsel, the staff judge advocate must disqualify himself from participating in the post-trial recommendation." *United States v. Lynch*, 39 M.J. 223, 228 (C.M.A. 1994) (citing *United States v. Caritativo*, 37 M.J. 175, 183 (C.M.A.

---

[1] Unless otherwise noted, all references in this opinion to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial (R.C.M.) are to the *Manual for Courts-Martial, United States* (2016 ed.).

[2] *See also United States v. Metz*, 36 C.M.R. 296, 297 (C.M.A. 1966); *United States v. Hardy*, 29 C.M.R. 337, 338 (C.M.A. 1960); *United States v. Clisson*, 17 C.M.R. 277, 280 (C.M.A. 1954).

1993)); *see also United States v. Engle*, 1 M.J. 387, 389–90 (C.M.A. 1976) (finding the staff judge advocate disqualified when he was called upon to review the accused's challenge to the ruling on a motion for new pretrial advice, which meant he "had to deal not just with his previous legal opinions, but with the factual sufficiency of his own earlier work"). "Human nature being what it is, . . . the very fact of being called upon to condemn or countenance one's own workmanship cannot create a healthy outcome and less so when the outcome concerns the accused's denial of substantial rights." *Engle*, 1 M.J. at 390 (quoting *United States v. Renton*, 25 C.M.R. 201, 205 (C.M.A. 1958)) (internal quotation marks omitted).

In determining whether or not Article 6(c), UCMJ, has been violated by a staff judge advocate who acted as trial counsel, the fact the staff judge advocate was not detailed as trial counsel is not dispositive. *United States v. Stefan*, 69 M.J. 256, 258 (C.A.A.F. 2010). Rather, the question is whether the staff judge advocate has previously performed the duties of trial counsel, which involves such considerations as "the action taken, the position of the person that would normally take that action, and the capacity in which the action is claimed to have been taken." *Id.* Giving general advice to trial counsel has not served to disqualify staff judge advocates from providing post-trial recommendations, but when a staff judge advocate engages in actions bearing "the earmarks of advocacy and zealous prosecution" or otherwise becomes involved in the case to the degree he or she shifts from the role of advisor to the role of participant, the staff judge advocate is disqualified. *United States v. Willis*, 46 C.M.R. 112, 114 (C.M.A. 1973); *United States v. Albright*, 26 C.M.R. 408, 413 (C.M.A. 1958).

Prior to taking action on any general court-martial or any special court-martial including a bad-conduct discharge, the convening authority must obtain and consider a staff judge advocate's written recommendation. Article 60(e), UCMJ, 10 U.S.C. §860(e). The purpose of the SJAR is to advise the convening authority as to what action to take on the court-martial sentence. R.C.M. 1106(d). The convening authority is an appellant's "best hope for sentence relief." *United States v. Lee*, 50 M.J. 296, 297 (C.A.A.F. 1999) (quoting *United States v. Bono*, 26 M.J. 240, 243 n.3 (C.M.A. 1998)). Thus, in providing his or her advice, the staff judge advocate "plays a pivotal role in an accused's chances for relief." *United States v. Edwards*, 45 M.J. 114, 116 (C.A.A.F. 1996).

Here, Lt Col AM personally took over trial counsel's task of negotiating the specific terms that would be included in the stipulation of fact, directly shaping the evidence presented to the military judge at trial. Lt Col AM admits he only became involved "due to the inability of counsel to agree" on terms to be included in the stipulation. In other words, trial counsel had been unable to secure the inclusion of terms Lt Col AM felt should be included, and he therefore decided to bring his own powers of persuasion to the negotiation to change the

course of those discussions. By doing so, Lt Col AM effectively communicated that if Appellant refused to include particular terms, Lt Col AM would oppose the pretrial agreement, dooming its chances before the convening authority. Also by doing so, Lt Col AM stepped into the shoes of trial counsel in determining what evidence would be included in the stipulation, a prosecution exhibit at trial. Calling for the inclusion of specific terms in a stipulation is analogous to making a decision as to what evidence to offer at trial—a function of trial counsel. *See* R.C.M. 502(d)(5) Discussion.

A staff judge advocate may initiate pretrial agreement negotiations under R.C.M. 705(d)(1). In this case, the pretrial agreement did not require specific terms in the stipulation, rather it required Appellant to enter a "reasonable" stipulation of fact, a common provision in written pretrial agreements. What are not common features of pretrial agreements are provisions requiring the admission of certain items of evidence supporting the Government's case.[3] This is not mere happenstance, as an agreement specifically calling for the admission of evidence designed to enhance an accused's punishment at trial could demonstrate "a personal interest or feeling in the outcome of a particular case" that could not only undercut a convening authority's assertions of impartiality, but potentially disqualify a convening authority from taking action on the case. Rather than attempt to specifically define evidence to be admitted at trial, pretrial agreements—such as the one Appellant signed—typically call only for "reasonable" stipulations, the specifics of which are left to be negotiated by the trial counsel in the same manner as which trial counsel determines what evidence to introduce at trial. Convening authorities acting upon the advice of their staff judge advocates may very well determine a pretrial agreement should not be entered into because the stipulation offered by the accused is not reasonable or for some other reason. What is prohibited is convening authorities and their advising staff judge advocates taking a personal stake in the matter.

The provisions sought by Lt Col AM were not minor adjustments to the stipulation. Instead, the increase in the number of drug uses from the single digits to nearly 200 dramatically changed the scope of the misconduct that would be presented to the military judge for use in determining an appropriate sentence. This reinforces my conclusion that Lt Col AM's engagement was not

---

[3] *But cf. United States v. Rogers*, 78 M.J. 736, 737 (A.F. Ct. Crim. App. 2019) (pretrial agreement "provided Appellant would not object to the admissibility of several specific items of evidence 'to be considered by the fact finder during the findings and sentencing portions of trial.'").

merely to give general guidance to the trial participants, but rather a determined effort to increase Appellant's sentence.[4] By so doing, Lt Col AM not only acted as trial counsel—by advocating for specific evidence to be admitted at trial—but also had a personal interest in the outcome of the case, that is, "other than an official interest."

Beyond Lt Col AM having shown a personal investment in presenting a larger scope of misconduct to the military judge, a legitimate factual controversy existed between him and trial defense counsel. In the memorandum submitted with Appellant's clemency request, trial defense counsel asserted Lt Col AM "insisted that the specific facts be included." Lt Col AM has disputed that assertion, describing it as a "mischaracterization," claiming he just "highlighted options." This is not a trivial distinction or matter of semantics—the degree and nature of Lt Col AM's involvement in his negotiation of specific terms to be included in the stipulation go to the heart of whether he had other than an official interest in the case. His attempt to downplay his role in the negotiations in the face of his admission he inserted himself in the process to secure the very concessions he ultimately obtained further indicates a personal interest in the case's outcome. In the face of this factual dispute, Lt Col AM should not have participated in the preparation of the SJAR, as he was put in the untenable position of having to review both the factual circumstances of his own actions and legal questions arising from the same.

The validity of the military justice system rests on the premise of the fair and impartial treatment of each case by the officers authorized to convene courts-martial, and this extends to the legal professionals who advise them. We have seven decades of jurisprudence underscoring this critical principle. Even as Congress has circumscribed the post-trial powers of convening authorities and reduced the transparency of the post-trial process to a degree by eliminating the written-SJAR requirement, convening authorities are still required to obtain legal advice in deciding whether to take post-trial action, and counsel who have acted in the case are still disqualified from giving that advice.[5] In light of the singular importance of fairness and impartiality in our command-driven justice system, and considering the facts of this case, I would find Lt Col

---

[4] Appellant had confessed the scope of his drug use to law enforcement agents during his investigation. Whether due to evidentiary shortcomings regarding the confession or for a tactical advantage, the Government focused its efforts on securing Appellant's stipulation to the information rather than offering the confession at trial. Lt Col AM's successful negotiation with trial defense counsel ultimately put the larger number of drug uses before the military judge, relieving trial counsel of the need to resort to the confession.

[5] R.C.M. 1109(d)(2), *Manual for Courts-Martial, United States* (2019 ed.) (2019 *MCM*); 10 U.S.C. § 806(c)(2)(B) (2019 *MCM*).

AM disqualified from preparing the SJAR on three bases: he acted as trial counsel, he had other than an official interest in the case, and there was a legitimate factual controversy between himself and trial defense counsel.

In addition, I cannot conclude Appellant was not prejudiced by Lt Col AM's preparation of the SJAR. Trial defense counsel admitted evidence that Appellant had provided significant assistance to civilian law enforcement agents in their pursuit of a drug-trafficking organization, taking "exceptional risk for his safety and well-being." Lt Col AM made no reference to this assistance in either his SJAR or his addendum, other than to say trial counsel could not be compelled to provide a written statement about Appellant's assistance. Appellant's request for clemency was also measured in that he asked to be released from confinement early. At the time of the request, he had served three months of his five-month sentence. At the most, he had about eight weeks of confinement remaining. Considering the availability of various credits in the confinement system, he likely had significantly less time to serve.[6] Given my assessment that Lt Col AM had developed a personal stake in maximizing Appellant's punishment, I cannot confidently conclude an impartial staff judge advocate would have made the same recommendation or that a convening authority advised by such an impartial staff judge advocate would not have granted Appellant some degree of sentence relief. I would return this record for new post-trial processing with advice provided by a conflict-free legal advisor.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court

---

[6] According to trial defense counsel, Appellant was scheduled to be released two weeks after the date he submitted his clemency request.